## LOEW v. GILLESPIE.

(Supreme Court, Appellate Term, First Department. June 10, 1915.)

1. ATTORNEY AND CLIENT ⨺20—DUTIES OF ATTORNEY TO CLIENT—ADVERSE INTERESTS.

An attorney, so long as the relation continues, is bound to give to his client his whole-hearted service, and he may neither do anything adverse to his client, nor accept a retainer to do anything which might be adverse to his client's interests.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 27, 29; Dec. Dig. ⨺20.]

2. ATTORNEY AND CLIENT ⨺130 — RIGHT TO COMPENSATION — REPRESENTING ADVERSE INTERESTS.

An attorney, while employed as a law clerk in a city department of finance, advised certain employés of the board of education that they had a good cause of action against the board, and obtained from them retainers for the purpose of bringing actions. The retainers in form ran to another attorney, but it appeared that the attorney in question expected to act as the actual attorney, to perform the contemplated services, and to have the expected compensation. It did not appear that he acted under the retainers until after severing his relations with the city. *Held* that, as the city would have to pay any judgment recovered against the board of education, the attorney could not recover compensation for services performed under such retainers, as his acts in advising suit and obtaining the retainers were directly adverse to the interests of the city, even though they did not conflict with his duties as law clerk, and an attorney will not be permitted to profit by a retainer which involves a disregard of his duty to a client, whether or not the party whom he is seeking to hold has profited by his wrong, or whether or not his acts have in fact injured the original client.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 292, 293, 295, 296, 306, 307, 311; Dec. Dig. ⨺130.]

3. ATTORNEY AND CLIENT ⨺166—ACTIONS FOR COMPENSATION—SUFFICIENCY OF EVIDENCE.

In an action by an attorney, who was formerly a law clerk in a city department, for services in an action against the city board of education, evidence *held* insufficient to show a new retainer by defendant after the attorney severed his connection with the city.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 368–372; Dec. Dig. ⨺166.]

Appeal from City Court of New York, Trial Term.

Action by John T. Loew against Albert D. Gillespie. From a judgment on the verdict of a jury in favor of plaintiff, and from an order denying defendant's motion for a new trial, defendant appeals. Reversed, and complaint dismissed.

Argued May term, 1915, before GUY, LEHMAN, and WHITAKER, JJ.

Dowsey & Parsons, of New York City (Erastus J. Parsons, of New York City, of counsel), for appellant.

Bershad & Gossett, of New York City, for respondent.

LEHMAN, J. In November, 1910, the plaintiff was a law clerk in the department of finance of the city of New York. While he was

---

⨺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

holding that position, he was consulted by some of the employés of the board of education respecting certain claims for higher salary. As a result of that consultation the employés held a meeting at which the plaintiff was asked to be present to give his advice. At that time he told them that the board of education had no power to fix the salaries of draughtsmen, but that the board of aldermen had such power; that this question had been decided by the Appellate Division in the case of Hogan v. Board of Education, 137 App. Div. 255, 121 N. Y. Supp. 924, and that the decision would undoubtedly be affirmed by the Court of Appeals. He also told them that the board of aldermen had passed a resolution fixing the salaries of architectural draughtsmen at $35 per week, and all the employés who had the title of architectural draughtsmen were entitled to recover the difference between any salaries they were then receiving and $35 per week for the past six years, and thereafter to have their salaries fixed at $35 per week. He testified:

"I said I had no doubt the Hogan Case would be affirmed by the Court of Appeals, and that then their case would be very clear and we could undoubtedly recover, and I told them what I would charge for instituting a suit and collecting back salaries. I said I would base my charges solely on the amount of the recovery, and not make any charge for having their salaries raised to $35 per week. * * * I said for the present I would not act as the attorney, but I said the Hogan Case will not be decided for a month or two. It is before the Court of Appeals now, and there is really no necessity for immediate action. Although I am confident that the Hogan Case will be confirmed in the Court of Appeals, it is just as well not to take any action until it is so affirmed. * * * At that meeting I left with them a retainer which I had prepared."

This retainer was signed by the defendant. It purports to employ one Lawrence J. Bershad as attorney for the prosecution of claims against the board of education on a contingent fee of 33⅓ per cent. On December 31, 1910, about two months after the defendant signed and the plaintiff received this retainer, the plaintiff severed his connection with the city. On January 10, 1911, the Court of Appeals affirmed the decision of the Appellate Division in the case of Hogan v. Board of Education, and the plaintiff proceeded to bring a test case to determine the rights of the architectural draughtsmen against the city. In March, 1911, the defendant came to the plaintiff's office, and plaintiff told him of this action, and they had a further talk about the retainer. The plaintiff's testimony upon that point is as follows:

"He [the defendant] said he had been up to see Mr. Bershad, and Mr. Bershad had told him to come down to see me. I said: 'Yes, you know I am handling all the cases. Bershad isn't handling any of those cases. I will take up your case the way I have all the others.' Q. Did you call his attention specifically to his retainer with Mr. Bershad? A. There was something said about it. I said: 'I will go ahead upon the retainer I have.' Q. That from Bershad? A. Yes."

Thereafter the plaintiff proceeded with the defendant's action, and the defendant recovered a judgment, which has been paid to him. The plaintiff now brings this action for the value of his services as attorney, and has recovered judgment for one-third of the amount he obtained for the defendant.

The defendant to some extent contradicts the plaintiff, and also urges that before the plaintiff began any action in his behalf he discharged plaintiff as his attorney and never ratified his action, though he concededly has accepted its fruits. Inasmuch, however, as I think that even upon the plaintiff's own testimony he has shown that he is not entitled to any recovery, it becomes unnecessary to consider the effect of the defendant's testimony.

[1] The relation of attorney to client is a high trust. So long as that relation continues the attorney is required to give to his client his whole-hearted service. Not only may he do nothing adverse to his client, but he may accept no retainer to do anything which might be adverse to his client's interests. These principles must be regarded as the foundation of all the rules which the courts and the leaders of the legal profession have announced as fixing the proper relations of attorneys and clients. Public policy absolutely demands that these foundations be not weakened, and the courts will not permit an attorney to profit by a retainer which involves in any degree a disregard of these principles. In my opinion, it is entirely immaterial whether or not the party whom the attorney is seeking to hold has profited himself by the attorney's wrong, or whether or not the attorney's acts have in fact injured the original client; the essential question in each case is whether or not the attorney has accepted a retainer which is in any manner in conflict with his obligation to some other client. If that appears, then, regardless of the form of the retainer or any other considerations, the attorney can recover no judgment for any services thereafter.

[2] The obligations which an attorney owes to his client are no less binding, where the attorney is in the employ of the city, than where he is in the employ of an individual. In this case the plaintiff on November 10, 1910, was a "law clerk" in the department of finance of the city of New York. By whatever term his position may be described, he yet was an attorney in the employ of the city, and as such owed to the city disinterested service. While still in that employment he advised a group of men that they had a good cause of action against the board of education, though any judgment against the board of education is payable from the city, and he even proceeded so far as to obtain retainers for the purpose of bringing such actions. In all probability these retainers would not have conflicted with the duties assigned to him as "law clerk" in the department of finance; but the acts of the plaintiff in advising suit and obtaining these retainers were directly adverse to the interests of his employer, and were in my mind incompatible with the obligations of the trust he owed to the city. In reaching this conclusion, I have not overlooked the fact that these retainers in form ran to a third person, and that the plaintiff is not shown to have acted under them till he had severed his relations with the city. His own testimony, however, conclusively shows that he always expected to act as the actual attorney, the charges were to be his charges, and the retainer contemplated his services, though there was no stipulation to that effect. It therefore seems to me quite clear that the plaintiff in obtaining these retainers acted without proper re-

gard for his duties as "law clerk," and that no recovery based upon such retainer can be sustained.

[3] The plaintiff, however, claims that he really acted under a new retainer obtained in March, 1911. I can find nothing in the testimony that allows any inference that there was such a retainer from the defendant. On the contrary, the plaintiff's testimony is clear that at that time he said that he, and not Bershad, was handling the cases, and to quote his own words: "I will go ahead upon the retainer I have." Under these circumstances, the judgment should be reversed, and the complaint dismissed.

This conclusion by no means involves any finding that the plaintiff has actually done anything which should be termed a moral wrong. If he had not accepted this retainer, doubtless some other attorney would have done so, and he has never been called upon to do anything, and it is at least doubtful whether he ever could. have been called upon to do anything, under his retainer, which interfered with his direct duties in the finance department. Nevertheless, I think that public policy demands that the courts take a firm stand that, in all cases where an attorney accepts a retainer which is adverse to the interests of his employer, it places the attorney in a position which interferes with the proper relation of attorney and client, and opens the way to grave abuses, even if in the actual case it has not interfered with the direct duties which the attorney is called upon to perform.

Judgment reversed, with costs, and complaint dismissed, with costs. All concur.