FREDERICK F. EISEMANN, Appellant, *v.* FLORENCE A. HAZARD, Respondent.

*Attorneys — action for services — when attorney can recover in such action notwithstanding defendant's claim that he represented other and conflicting interests.*

1. It is not always improper or unlawful for an attorney at law to represent conflicting interests. Adverse interests, if they are to be adjusted, may be represented by the same counsel, though the cases in which this can be done are exceptional, and never entirely free from danger of conflicting duties.

2. Plaintiff, an attorney at law, was employed by defendant to straighten out the business affairs of a firm of which the deceased husband of defendant had been a member, and to get control of the business of the firm for defendant. It appears that, acting as her attorney, with the knowledge of the other partners and creditors of the firm, he was instrumental in having such firm declared bankrupt, upon the petition of its creditors, for one of whom he was attorney; that he, with the knowledge of the committee of creditors of which he was a member, negotiated a settlement; that plaintiff was appointed the trustee in bankruptcy to carry on the business pending the completion of the composition agreement, and while acting as such, by coercing the surviving members of the bankrupt firm, procured, by threatening to oppose the composition settlement, such a distribution of the stock of the corporations that defendant became the owner of a majority thereof; that during this time plaintiff and defendant discussed the matter of his compensation, and it was agreed that his charges should be a certain amount on which was to be credited the compensation received by him as trustee in bankruptcy, and from the petitioning creditors in the bankruptcy proceeding, the balance to be paid by defendant, who gave her note for part of such balance, which has been paid. This action is brought to recover the remainder of plaintiff's charge. The jury gave a verdict for plaintiff, and the Appellate Division has reversed the judgment entered thereon and dismissed the plaintiff's complaint on the ground that he had undertaken to represent conflicting interests while acting as attorney for defendant. This defense was not pleaded nor advanced on the trial, nor had any creditor of the bankrupt firm complained of the plaintiff's conduct, and it first appeared in the record when the case was before the Appellate Division. *Held,* that while there may be some criticism

of plaintiff's conduct in coercing the bankrupts into giving the defendant a controlling interest in the corporations formed to carry on the business of the defunct firm, the defendant can find no fault therewith; that it was error to dismiss the plaintiff's complaint; that regarding the evidence, as this court must, in the aspect most favorable to the plaintiff, there was sufficient to sustain the verdict, and the case should not have been disposed of at the Appellate Division as involving only a question of law.

*Eisemann* v. *Hazard*, 161 App. Div. 703, reversed.

(Argued March 10, 1916; decided May 9, 1916.)

APPEAL from a judgment, entered March 19, 1914, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

The facts, so far as material, are stated in the opinion.

*Jerome Eisner* for appellant. Plaintiff did not represent conflicting interests and all parties in interest were informed that he was defendant's attorney. (*Keyes* v. *McKerrow*, 180 Mass. 262.) The Appellate Division was not justified in dismissing the complaint. (*Joslin* v. *Cowee*, 56 N. Y. 626; *Nekarda* v. *Presberger*, 123 App. Div. 418.)

*James A. Gray* for respondent. The plaintiff having represented adverse and conflicting interests cannot collect compensation for services rendered. (*Munson* v. *S. G. & C. Ry. Co.*, 29 Hun, 76; *Anon.*, 7 Mod. 7; *Herrick* v. *Catby*, 1 Daly, 512; *White* v. *Hoffaker*, 27 Ill. 349; *Spinks* v. *Davis*, 32 Miss. 152.)

CUDDEBACK, J. The plaintiff in this action is an attorney and counselor at law, and he sues to recover for professional services performed by him for the defendant at her request. The answer in the action is a general denial. In the trial court the plaintiff recovered a judgment. The Appellate Division reversed the judgment and dismissed the plaintiff's complaint.

It appears from the plaintiff's testimony that he was employed by the defendant in the month of August, 1907, in respect to the wholesale grocery firm of E. C. Hazard & Company.  The defendant's husband, who had been the principal partner in the firm, had died, and his affairs were going on badly.  The surviving partners refused to give the defendant any information as to the firm's business, and they were at the same time calling on her for contributions of money to carry on the business.

She employed the plaintiff to straighten out the partnership matters, and to secure for her the control of the firm.  The plaintiff accepted the employment and at once began an investigation, informing the surviving partners that he was acting as the attorney for the defendant.  He reported to the defendant the result of his investigation, and advised her that the firm should be put into bankruptcy and a settlement made with the creditors.  He informed her that his clients, William Lanahan & Son, were large creditors of E. C. Hazard & Company, and that he would ask them to join in a bankruptcy petition, of which course the defendant approved.

The plaintiff informed William Lanahan & Son of his relations, as attorney, with the defendant, and on his request they joined with two other creditors in an involuntary petition in bankruptcy, which was filed on August 21, 1907.  After the appointment of the receiver in bankruptcy the plaintiff called a meeting of creditors, at which he urged them to consent to a composition, and he was one of a committee of five to examine into the condition of the business and report, to the creditors. The plaintiff informed the members of the committee that he was the attorney for Mrs. Hazard, and he reported to her and kept her informed as to the result of his endeavors.

There was considerable opposition to the composition among the creditors, but after a time the committee

recommended that payments in cash of ten cents on the dollar and fifty cents in five notes, payable at intervals of two months, should be accepted. The notes were to be the notes of two corporations formed to carry on the business of the bankrupt's firm and the stock of the corporations was to be collateral to the notes. This composition was finally accepted by the creditors and the plaintiff was appointed trustee in bankruptcy to carry on the business of the bankrupt concern pending the completion of the composition agreement.

The plaintiff next proceeded to get control for the defendant of the corporations that were to succeed to the business of the old firm. This he did by procuring a distribution of the stock of the two corporations so that the defendant would become practically the owner of two-thirds thereof. He coerced the bankrupts who were the surviving partners of the old firm into allowing the defendant this percentage of the stock by threatening to oppose the composition settlement. The plaintiff was appointed trustee on or about November 12, 1907, and he carried on the business with remarkable success until the 12th day of February, 1908. At about that time he turned the business over to the bankrupts and the defendant. Subsequently all the composition notes were paid.

In January, 1908, while the plaintiff was still acting as trustee, he and the defendant discussed the matter of his compensation. It was agreed that his charges should be $10,000, on which was to be credited $3,000, his compensation as trustee, and $500, his charges against the petitioning creditors in the bankruptcy proceeding, and the balance, $6,500, it was agreed should be paid by the defendant. At that time she gave her note for $1,500 on account of the balance due, which was subsequently paid, and this action is brought to recover the remainder of the plaintiff's charge, $5,000.

The jury gave the plaintiff a verdict of $2,300 and interest. The Appellate Division reversed the judgment

entered on the verdict, and at the same time dismissed the plaintiff's complaint on the ground that the plaintiff had undertaken to represent conflicting interests while acting as attorney for the defendant. The Appellate Division said: "It is an elementary proposition, founded on one of the oldest and soundest maxims of good morals, that an attorney may not represent adverse interests or undertake to discharge conflicting duties, and that if he does so, he cannot receive compensation from either party."

It is to be observed that this defense was not pleaded. The answer contains only a general denial. Nor was the defense advanced on the trial. It first appeared in the record when the case was under consideration by the Appellate Division. The defendant before that did not complain that the plaintiff, while acting as her attorney, had undertaken to represent adverse interests. Neither, so far as it appears, had Lanahan & Son, or any other creditor of the bankrupt firm, complained of the plaintiff's conduct in that regard.

It is not always improper or unlawful for an attorney at law to represent conflicting interests. Adverse interests, if they are to be adjusted, may be represented by the same counsel, though the cases in which this can be done are exceptional, and never entirely free from danger of conflicting duties. (*Lawall* v. *Groman*, 180 Penn. St. 532; *Jones* v. *Howard*, 99 Ga. 451; *Jones* v. *Lamont*, 118 Cal. 499; *Shaw* v. *Bill*, 95 U. S. 10.)

But let us see what the plaintiff in this case undertook to do. The contract between him and the defendant was that he should straighten out the affairs of E. C. Hazard & Company and get control of the firm for the defendant. It was contemplated that this should be done by an involuntary proceeding in bankruptcy, and a settlement with the creditors. Pursuant to that arrangement, the plaintiff induced William Lanahan & Son to institute the bankruptcy proceeding and he afterwards

met with the creditors and brought about the composition agreement. That was precisely what the plaintiff was employed to do and the defendant knew of the different steps he took in her behalf, and she approved the same. It was all incident to his original retainer.

If the plaintiff's conduct in this case is to be condemned, it is not because he was untrue to his client and represented both her and those opposed to her in the same transaction. It must be that it was unlawful for him to accept such a retainer as he did accept, but I cannot see that it was unlawful. There may be some criticism of the plaintiff's conduct in coercing the bankrupts into giving the defendant a controlling interest in the corporations formed to carry on the business of the defunct firm, but that was within the terms of his employment. The defendant can find no fault therewith. The only persons who might find fault are the bankrupts who were so coerced, but they have entered no complaint. The rules of law laid down in the opinion of the Appellate Division, and the cases therein cited, as to the responsibilities of an attorney at law to his client, are wholesome regulations, but they have no application to this case.

It was error for the Appellate Division to dismiss the plaintiff's complaint. Regarding the evidence, as we must, in the aspect most favorable to the plaintiff, there was sufficient to sustain the verdict. (*Faber* v. *City of New York*, 213 N. Y. 411.) The case should not have been disposed of at the Appellate Division as involving only a question of law.

I recommend that the judgment appealed from be reversed, with costs to the appellant, and case remitted to the Appellate Division for a consideration of the facts.

HISCOCK, COLLIN and POUND, JJ., concur; WILLARD BARTLETT, Ch. J., CHASE and HOGAN, JJ., dissent.

Judgment reversed, etc.