In re INLAND GAS CORPORATION.

In re KENTUCKY FUEL GAS CORPORATION.

Nos. 989 and 991.

District Court, E. D. Kentucky, at Lexington.

Oct. 2, 1947.

Milbank, Tweed, Hope, Hadley & Mc-Cloy, of New York City, and LeWright Browning, of Ashland, Ky., for Vanston Committee.

Richard B. Hand, of New York City, Robert J. Bulkley, of Cleveland, Ohio, W. R. Darragh, of Lexington, Ky., and Arthur G. Logan, of Wilmington, Del., for Van Horn Committee.

Baker, Obermeier, Rosner & Rosenson, of New York City, for Green Committee and Morris Green.

Willkie, Owen, Otis, Farr & Gallagher, of New York 'City, and Martin Smith, of Catlettsburg, Ky., for Paul Committee.

Cadwalader, Wickersham & Taft, of New York City, and Woods, Stewart & Nickell, of Ashland, Ky., for New York Trust Co.

Kaye, Scholer, Fierman & Hays, of New York City, for Manufacturers Trust Co.

H. W. Bowers, of Charleston, W. Va., and Woodward, Dawson, Hobson & Fulton, of Louisville, Ky., for Carl B. Early and others.

Clifford E. Smith, of Frankfort, Ky., for Ben Williamson, Jr., trustee.

C. J. Odenweller, Jr., and Kenneth J. Nordstrom, both of Cleveland, Ohio, and Lawrence M. Greene and James F. Goode, both of Philadelphia, Pa., for Securities and Exchange Commission.

FORD, District Judge.

This is a proceeding for reorganization of the above named debtors, originally instituted under section 77B of the Bankruptcy Act, 11 U.S.'C.A. § 207. Soon after the enactment of Chapter X of the Act, 11 U.S.C.A. § 501 et seq., it was found practicable to apply the provisions of that chap-

ter to the proceeding and accordingly all subsequent action has been in accordance therewith.

Committees of creditors, their attorneys and depositories, indenture trustees and others have filed petitions for allowances as compensation for services rendered and for reimbursement of expenses incurred in connection with the administration of the estates of the debtors, as authorized by Sec. 242 of Chapter X of the Bankruptcy Act, as amended, 11 U.S.C.A. § 642.

Extensive litigation upon many questions vital to the estates of the debtors has unavoidably prolonged the proceeding far beyond the period usually required for the termination of such actions, but due to the efficient manner in which the Trustee has operated and developed the business and property of Inland and the advantages which have resulted from the successful conclusion of the controversies in litigation, perhaps the delay has been an advantage rather than a detriment. The profitable operation of Inland has enabled the Trustee not only to make large expenditures in acquiring and developing gas reserves and in improving operating facilities but to pay $4,439,027 in principal and interest on Inland First Mortgage Bonds, leaving a balance due of only about $800,000.

As of June 30, 1947, the Trustee of Inland had on hand $1,458,000 in cash and current assets available for working capital, payment of the balance due to First Mortgage Bondholders and the payment of allowances authorized by Sec. 242 of the Act. In order to eliminate the high interest charges continuing to accrue on the remaining balance of the First Mortgage Bonds, as well as to reduce the classes of claims to be dealt with in a plan of reorganization, it appears desirable that this balance be paid in full if the funds remaining on hand, after payment of allowances, are sufficient for that purpose without impairment of necessary operating capital, a determination which cannot be made or safely estimated until the Court has fixed the amount of the allowances.

In the Kentucky Fuel estate the Trustee has on hand in cash and current assets approximately $220,000. Since this debtor is not an operating company and has no working capital requirements, such of this fund as will remain, after the payment of allowances reasonably chargeable to it, will be available for final distribution to its bondholders.

The major litigation in which compensable services have been rendered has been concluded. It will not only be fair to those who, for many years, have rendered valuable service, but it will obviously facilitate a plan of reorganization of Inland and a final distribution to the bondholders of Kentucky Fuel for the Court to fix and determine the amounts now properly chargeable to both the estates.

The Securities and Exchange Commission, which, at the request of the Court, has actively participated in the proceeding, concurs in the view that special circumstances justify departure from the general rule of postponing the making of such allowances until the proceedings are ready to be brought to a close.

In my effort to reconcile the provision of the Act authorizing reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred, in connection with the administration of the estates, with the established rule which requires rigid economy in bankruptcy administration, I have had the benefit of a thorough analysis of the various applications for allowances prepared by the Securities and Exchange Commission together with its recommendations in respect to all of them. The fact that the Court is not able to concur in all recommendations is no disparagement of the value of the service of the Commission.

In view of the substantial allowances requested by various attorneys for creditors' committees, it seems appropriate to briefly summarize the nature of the principal matters of litigation which have commanded their professional services.

The so-called Hamilton and Piney litigation involved claims against Inland aggregating approximately four and one-half million dollars. They were asserted as a lien upon all assets of the debtor prior and superior to all other claims. The intricate questions involved are set out in the opinion of the

Circuit Court of Appeals reported in Hamilton Gas Co. v. Inland Gas Corporation, 6th Cir., 102 F.2d 131. While the case was pending before the Supreme Court in October 1939, it was compromised by the payment of $50,000, thus completely eliminating claims which threatened to wipe out the equity of all other creditors of the estate.

The "Columbia advances" litigation, the details of which are set out in the opinion of the Circuit Court of Appeals in, 6 Cir., 91, F.2d 113, together with the "Columbia off-set" litigation, the details of which are set out in an opinion of this Court filed in this record, resulted in the defeat of claims approximating $400,000.

The litigation referred to as the "Kentucky State Tax" case involved a claim of the State of Kentucky against the Trustee of Inland and Kentucky Fuel for State taxes on the funds of these estates invested in postal savings certificates. The case was terminated by an opinion of the Circuit Court of Appeals rendered April 17, 1942, 6 Cir., 127 F.2d 657, holding the assessment of postal savings certificates for State taxation invalid, thus relieving these estates of heavy burdens.

Litigation arose over a proposed settlement with Columbia Gas & Electric Corporation. It was terminated in August 1941 by the Circuit Court of Appeals' disapproval of the settlement. See, In re American Fuel & Power Co., 6 Cir., 122 F.2d 223.

Prolonged litigation ensued with Columbia in which rejection or subordination of all Columbia's bond claims against Inland and Kentucky Fuel was sought. Columbia's holdings in bonds aggregated more than three million dollars against each estate. The opinions of the Circuit Court of Appeals reported in Columbia Gas & Electric Corporation v. United States, 6 Cir., 151 F.2d 461, and Id., 6 Cir., 153 F.2d 101, decreed the subordination of the Columbia held bonds to the claims of all other creditors of every class. On October 14, 1946, the Supreme Court denied certiorari, 329 U.S. 737, 67 S.Ct. 48.

The so-called "interest on interest" litigation and that usually referred to as the "mortgage coverage" litigation involved questions of great difficulty and complexity which the Supreme Court finally determined in an opinion rendered on December 9, 1946, reported in Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 67 S.Ct. 237.

The Vanston Committee, composed of W. J. K. Vanston, Frederick J. Fuller and P. Erskine Wood, has represented a substantial number of the holders of First Mortgage Bonds of both debtors from the beginning of this proceeding. It has applied for an allowance of $36,000 as compensation for services rendered and an additional amount for reimbursement for expenses incurred.

The Van Horn Committee, composed of Russell Van Horn, Wendell E. Warner and Edward Austin Waters, was organized in 1938 as a representative of certain of the First Mortgage Bondholders of Inland who became dissatisfied with the services of the Vanston Committee. Mr. Van Horn is precluded from any allowance by the provisions of Sec. 249 of the Act, and the request of the Committee for an allowance for $7,500 for services and an additional sum for reimbursement for expenses is considered only on behalf of Messrs. Warner and Waters.

The Paul Committee, composed of Clyde L. Paul and William T. Phillips, has represented a substantial number of the holders of second mortgage bonds (debentures) of both debtors since the beginning of the proceeding. They request compensation for services in the sum of $22,500 and an additional amount for reimbursement of expenses incurred. Mr. Paul must be denied any allowance for his services or expenses, under the provisions of Sec. 249 of the Act, and the claim for allowance is considered only in respect to the services rendered and expenses incurred by Mr. Phillips.

The memorandum and report filed by the Securities and Exchange Commission contains a thorough and exhaustive study and discussion of the applications filed by these committees respectively and sets out in detail the nature of the services rendered by each of them, and the amount of expenses incurred which are lawfully reimbursable

from the estates of the debtors. I concur with the views expressed by the Commission in respect to the compensable services and expenses of these Committees and consider the allowances recommended fair and reasonable. Accordingly the following allowances will be made to them: Vanston Committee for services $7,500 and expenses $265; Van Horn Committee for services of Messrs. Warner and Waters, $1,500; Paul Committee, services of Mr. Phillips $500; liability incurred by Paul Committee to City Bank Farmers Trust Company for depository services, $2,500.

For reasons adequately stated and discussed in its report, with which I concur, the Securities and Exchange Commission recommends the following allowances which will be made accordingly, viz.: Brokaw, Dixon & McKee, for engineering services $5,250 and expenses $116.11; Manufacturers Trust Company, for services as First Mortgage Indenture Trustee for both debtors, $860; Kaye, Scholer, Fierman & Hays, for services rendered as counsel to the Manufacturers Trust Company, Indenture Trustee of both debtors, $500; Willkie, Owen, Otis, Farr & Gallagher and Martin & Smith, for services as counsel to the Paul Committee, $5,000, expenses $2,460.72, services as counsel for the New York Trust Company, Trustee for Inland Debentures, $625; The New York Trust Company, for services as the Indenture Trustee for Inland $2,500, including the $1,000 allowance previously made for services during the receivership; Cadwalader, Wickersham & Taft, for services rendered the New York Trust Company, Debenture Trustee for Inland, for which allowance was previously made but which has not been paid, $3,000 and expenses $355.15; Woods, Stewart & Nickell, to cover allowance previously made as compensation for services to the New York Trust Company, Debenture Trustee for Inland, but which has not been paid in full, $1,500 and $25 expenses, subject to a credit of $518.75 leaving the net allowance for services $981.25; Ben Williamson, Jr., for services as Trustee for Kentucky Fuel Gas Corporation for the period from December 5, 1945, to February 5, 1947, $1,400.

Milbank, Tweed, Hope, Hadley & McCloy, of New York, and LeWright Browning, of Ashland, Ky., have served as counsel to the Vanston Committee from the inception of the receivership in 1932, and throughout this proceeding to the present time. They have been heretofore allowed and paid $15,000. The Milbank firm has filed request for an additional allowance in the sum of $100,000 and Mr. Browning for an additional allowance in the sum of $75,000; thus, including the prior payment, the allowances sought by these attorneys for their services aggregate $190,-000. The Commission has recommended allowance to the Milbank firm in the sum of $55,000, subject to a credit of $7,500 previously paid and an allowance to LeWright Browning in the sum of $65,000 also subject to be credited by $7,500 previously paid to him; thus recommending an overall allowance totaling $120,000. While it is true that the attorney for the Trustee collaborated to some extent in the Hamilton and Piney litigation, the Columbia advances litigation and the Columbia offset litigation, the principal legal services in these important cases, which resulted in the defeat of more than four and one-half million dollars in claims against the estates of the debtors, were rendered by these attorneys for the Vanston Committee. They prepared and instituted these 77B proceedings and in addition to the necessary work preliminary thereto they rendered services of benefit to the estates during the several years of the receivership. They have taken a leading part in all the other litigation involved in this proceeding with the exception of the Columbia subordination case. Excluding the services rendered during receivership and their work in connection with the proposed, but abandoned, plan of reorganization, which, as pointed out by the Commission, are not compensable, I am of the opinion that an overall allowance of $125,000 is reasonable compensation for their joint services which are herein compensable. Crediting this amount by the payment heretofore made of $15,000 leaves $110,000 to be presently allowed, which should be apportioned equally between them, that is $55,000 to the Milbank firm and $55,000 to LeWright Browning. In

addition to the services rendered by Le-Wright Browning in collaboration with the Milbank firm and other attorneys, he has rendered capable and valuable service in the administration of these estates for which, in my opinion, he is entitled to an additional allowance of $20,000. Without detailing the many special services of great value to the administration of the estates thus rendered by LeWright Browning, which included his active and helpful aid to the Trustee in successfully resisting tax claims asserted by the State of Kentucky, successful resistance of the efforts to compel the Trustee to supply gas to domestic consumers at Olive Hill, Ky., which required his appearance before administrative bodies of the State, the State Appellate Court and the United States Circuit Court of Appeals, and investigation and advice upon many matters involving important administrative policies throughout the entire period of this proceeding, it is sufficient to say that I am convinced of the fairness and reasonableness of this additional allowance to Mr. Browning and that compensation therefor is authorized by Sec. 242 of the Bankruptcy Act. I concur in the Commission's recommendation for the allowance of $3,543.76 for expenses incurred by the Milbank firm and the further sum of $3,692.85 depository liability and the sum of $305.93 expenses of Mr. Browning.

■ Attorneys, Richard B. Hand, Robert J. Bulkley and W. E. Darragh, and the executrix of attorney George W. Vaughn, deceased, request an allowance of $170,000 as compensation for services rendered as counsel for the Van Horn Committee. The principal service of these attorneys was that of collaboration with counsel for other committees in the litigation which involved the proposed settlement with Columbia, the subordination of Columbia's claims, the interest on interest case and the litigation involving the question whether the rejected claim of Columbia should be deemed as an asset of the estate for the benefit of all creditors and whether the lien of the first mortgage embraced after acquired property. They also rendered some service in the administration of the estate in giving the Trustee the benefit of their views upon various policies of administration, examination of gas leases, new contracts and other such matters. They did not participate in the earlier Hamilton & Pincy litigation nor in the litigation involving Columbia advances or that involving Columbia's offset claims. For their services, the Commission recommends an overall allowance of $90,000. In view of the fact that their services have been largely duplicative of those rendered by other counsel who are claiming substantial allowances for services in the same matters, allocating to them $25,000 for services rendered in the Columbia subordination case and $25,000 for their collaboration in other matters of litigation, I am of the opinion that for all services the sum of $50,000 is fair and reasonable compensation. I concur in the Commission's recommendation that they be also allowed $804.03 as reimbursement for expenses.

Baker, Obermeier, Rosner & Rosenson, counsel for the Green Committee in American Fuel and Power Company proceedings and counsel to Morris Green, a holder of first mortgage bonds of Inland, have collaborated with other counsel in the same litigation to which reference is made in the above discussion of the services of counsel for the Van Horn Committee and in general have rendered the same nature and extent of professional services as those rendered by counsel for the Van Horn Committee. This firm requests compensation aggregating $125,000 and the Commission recommends an allowance of $70,000. I am of the opinion that this firm is entitled to the same compensation as that allowed the attorneys for the Van Horn Committee, viz., $50,000.

■ From the spring of 1937 until February 7, 1938, Arthur G. Logan represented Messrs. Green and Heilbrunn. On February 7, 1938, by appointment of the Court he became special counsel for the Trustee of the debtors in connection with the litigation involving the proposed settlement with Columbia. In March 1942 he was employed to represent the Van Horn Committee in association with its other counsel. He requests compensation for his services in the sum of $210,000. The Commission recommends that he be allowed $110,000.

As Special Counsel for the Trustee, Mr. Logan instituted an action against Columbia in U. S. District Court of Delaware, which is still pending and the allowance made to him at this time is not intended to cover services rendered or to be rendered in the Delaware litigation. The principal services rendered by Mr. Logan have consisted in investigating the law and facts involved in the action for subordination of the claims of Columbia against these debtors. He engaged in extensive study of the Federal Trade Commission reports and interviewed numerous persons familiar with the facts. The information so obtained by him constituted the basis for the cases which resulted in the subordination of Columbia's claims and also the Delaware litigation. The fact is, as stated by the Commission, "Mr. Logan was in large part responsible for initiating and following through the various actions taken which finally resulted in the subordination of the Columbia claims. His services were, therefore, of great value to all the public creditors of the parent and subsidiary debtors." However, in addition to Mr. Logan's co-counsel for the Van Horn Committee and counsel for the Green Committee, who actively collaborated with him in the subordination litigation and rendered substantial services for which they have requested and are herein allowed compensation, he had the able assistance and collaboration of Mr. Paul Williams, an Assistant to the Attorney General, who represented the United States in the subordination case, after the Government intervened therein. Mr. Williams shared with Mr. Logan and his associates a substantial part of the professional labors involved. This litigation attained no reduction of the indebtedness of the debtors and added nothing to their assets. It merely moved Columbia's bond claims from the top to the bottom of the list and to that extent enhanced the position of other creditors. Considering the time spent in preparation and trial of the case, the difficulties of the problems involved, the results achieved and bearing in mind, of course, that this is a bankruptcy proceeding which requires economy in making allowances, I am of the opinion that $150,000 would represent fair compensation for all legal services rendered in the Columbia subordination litigation (including the value of the services of the Assistant Attorney General). Of this overall evaluation of legal services, in my opinion $25,000 should be attributed to the value of the services rendered by Mr. Williams, leaving $125,000 to be apportioned between other counsel. In my opinion, Arthur G. Logan should be allowed $75,000 of this amount. The remaining $50,000 I have allocated upon the basis of $25,000 included in the overall allowance to Richard B. Hand, Robert J. Bulkley, W. E. Darragh and George W. Vaughn's executrix, and $25,000 included in the overall allowance to Baker, Obermeier, Rosner & Rosenson. Since the services rendered by Arthur G. Logan as attorney for Green and Heilbrunn, during the year 1937 and until February 7, 1938, consisted principally in the investigation and preparation of the subordination case, no additional allowance will be made him on that account; but for his services to the Trustee in the proposed Columbia settlement, he is entitled to additional compensation for which I think he should be allowed the further sum of $10,000, thus making his total allowance $85,000 for all services to date other than those rendered in the Delaware litigation. I concur in the Commission's recommendation that Arthur G. Logan be allowed the sum of $723.77 for his expenses.

Applications for allowances have been filed by Carl B. Early and others representing owners of Inland debentures, H. W. Bowers, attorney for Carl B. Early and associates, and Woodward, Dawson, Hobson & Fulton, attorneys for Carl B. Early and his associates.

■ Since the application filed by Carl B. Early and his associates for reimbursement of expenses incurred by them as a group is not supported by the affidavit required by Sec. 249 of the Act, the Commission recommends no allowance to them, and with this recommendation I concur.

■ Allowance to H. W. Bowers on account of his services on behalf of the Early group is precluded by the provisions of Sec. 249 on account of the fact that his wife Emma C. Bowers bought and sold certain Inland debentures during the proceed-

ing and was a member of the group represented. The rule governing the application of Sec. 249 to a situation of this character is stated by Circuit Judge Biggs of the Third Circuit (sitting as District Judge) in Re Midland United Co., D.C., 64 F.Supp. 399, 416. The recommendation of the Commission that Mr. Bowers' application for allowance be denied is approved.

The Commission also recommends denial of the allowance requested by Woodward, Dawson, Hobson & Fulton. At the hearing held for the consideration of allowances, Judge Charles I. Dawson, a member of this firm, appeared and frankly stated to the Court that this application was made pursuant to his contract of employment by the Early group of Inland debenture holders by whom he was employed to participate in the "interest on interest" litigation before the Circuit Court of Appeals. Since Judge Dawson's fee for the services rendered had been paid prior to the date of the hearing, he stated that whatever allowance might be made pursuant to this application would be proportionately refunded to the members of the Early group, who had contributed to the payment of his fees, thus making it clear that this application is for the sole benefit of members of the Early group. As heretofore stated, the Early group has failed to support its claim for allowances by the affidavit required by Sec. 249. The testimony at the hearing developed the fact that the members of the Early group were speculators in Inland debentures and their participation in the proceeding through their attorneys merely constituted an effort to promote their speculative venture. In participating in this proceeding, they purported to represent the interest of all debenture holders in the "interest on interest" litigation. Although they did not formally acknowledge themselves to be a committee, it seems clear that they acted in a representative capacity, within the meaning of Sec. 249 of the Act. I concur with the views expressed by the Commission that

Sec. 249 prohibits this allowance and it is therefore denied. However, in fairness to Judge Dawson and his firm, it should be made clear that there is nothing to indicate that he or any member of his firm participated in or had any knowledge of the activities of its clients in speculating in the securities referred to and the denial of the allowance reflects no dereliction whatever on the part of the attorneys in whose name the application is made.

The final problem is the question of an equitable apportionment of the allowances herein made as between the estates of Inland and Kentucky Fuel. The testimony at the hearing upon the question indicated general concurrence in the view that the services for which allowances are made principally benefitted the Inland estate and it should bear the far greater proportion of the burden. In its report the Commission says: "The services rendered to the two estates were so intertwined and the benefits inuring to each so difficult to evaluate, * * * that any estimate would be purely arbitrary. * * * Therefore, we recommend that the court adopt the proportion of twenty-five to one suggested by the trustee as the measure for allocating the allowances for services rendered and expenses incurred on behalf of both debtors * * *."

I find myself unable to offer any better solution of the problem. The recommendation of the Commission is approved, that is, in addition to the allowance herein made to its Trustee, one-twenty-sixth (1/26) of the total amount herein allowed the Vanston Committee and its counsel; the Van Horn Committee and its counsel; Arthur G. Logan; Brokaw, Dixon & McKee; the Paul Committee and its counsel; and Baker, Obermeier, Rosner & Rosenson will be charged to the estate of Kentucky Fuel Gas Corporation and the remainder of all allowances herein made will be charged to the estate of Inland.

Appropriate orders will be entered in conformity herewith.