SILBIGER et al. v. PRUDENCE BONDS CORPORATION.

No. 168, Docket 21536.

United States Court of Appeals Second Circuit.

Argued Jan. 31, 1950.

Decided March 7, 1950.

Rehearing Denied April 5, 1950.

918

Charles M. McCarty, New York City, James F. Dealy, New York City, for appellants.

Samuel Silbiger, Brooklyn, N. Y., pro se.

Lester H. Marks, New York City, for Arthur Miller.

Milton Haselkorn, New York City, for Weil, Gotshal and Manges.

Aaron Schwartz, New York City, for Joseph Nemerov.

Before L. HAND, Chief Judge, and SWAN and CHASE, Circuit Judges.

L. HAND, Chief Judge.

This is an appeal, by leave of this court, of "Prudence Bonds Corporation (New Corporation)" and Reconstruction Finance Corporation, from an order in bankruptcy, awarding allowances to four sets of attorneys for services performed in the reorganization of the Debtor, Prudence Bonds Corporation, begun in 1934 under § 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. The active appellant is the "New Corporation," which was organized to take over and complete the liquidation of the property of the Debtor; the Reconstruction Corporation—the other appellant—we shall disregard, for its interests and positions are identical with those of the "New Corporation." The allowances were for services rendered in what for convenience we shall call the "Construction Proceeding," which we decided in December, 1947, and for the details of which we refer to our reported opinion.[1] A master made the allowances in question which the district judge affirmed, and we gave leave to appeal, "limited to the question of conflict of interest represented." Those series of "Publicly Held Bonds" whose stipulated interest we allowed in full, so far as the collateral sufficed, we shall call the "Surplus Series", the other series we shall call the "Deficit Series." The allowances were awarded out of the collateral of all the "Surplus Series", and were allocated roughly in proportion to the amounts by which these series profited by the appeal. The attorneys to whom allowances were awarded were Samuel Silbiger; Arthur Miller; Weil, Gotshal and Manges; and Joseph Nemerov; and the objections are that these attorneys either represented conflicting interests in the "Construction Proceeding," or that their clients had violated § 249 of Chapter X,

1. Eddy v. Prudence Bonds Corporation, 165 F.2d 157.

11 U.S.C.A. § 649. Since the facts in the case of Silbiger are different from those in that of Miller, or of Weil, Gotshal & Manges, we will consider the appeals separately.

### Silbiger's Allowance

■ Silbiger was retained in the reorganization by one, Eddy, who held bonds in several "Surplus Series" and even more bonds in several "Deficit Series." Since the collateral securing each "Surplus Series" was no more than enough to pay that series in full, principal and interest, the result of Silbiger's appeal in the "Construction Proceeding" was to take from the "Deficit Series" what the district court had awarded to them and give it and more to the "Surplus Series." Because Eddy held bonds in both "Surplus" and "Deficit Series," his individual interest in the "Construction Proceeding" was conflicting; if the final decision was for the "Surplus Series," he would receive interest in full upon the bonds which he held in those series, but he would lose any dividend out of the collateral of the "Surplus Series" upon the bonds which he held in the "Deficit Series," although it does not appear in the record whether on the final balance he would have won or lost, if the decision of the district court had been affirmed. Silbiger swore that he explained the situation to Eddy, who told him to take the position which he did upon the appeal. He maintains he did take it at the hearings before the master and the district court; and, although the "New Corporation" denies this, and argues that Silbiger's briefs in the lower court are not plain, the issue is of no importance, and we may assume that from the outset his position was unchanged. We accept the master's finding as not "clearly erroneous" that he explained to Eddy the "respective rights of the Public Bondholders," and that Eddy "chose to claim that each Series of bonds must stand on its own feet." As will appear when we discuss the objections to the allowances of Miller and of Weil, Gotshal and Manges, we think that a creditor who holds conflicting claims in a reorganization is free to file both and select which one he prefers even though its success will be to the detriment of the other.

■ Although Silbiger is to be acquitted of any disloyalty to Eddy personally, we cannot say the same as to his two other clients, Mrs. Born and Mrs. Reilly, who held bonds only in "Deficit Series," and whom Silbiger had represented in proceedings to surcharge the accounts of the "indenture trustees" of those series. These proceedings had resulted in recoveries; but, since they had all been completed before the "Construction Proceeding" was begun, and since—as Silbiger argues—they were suits separate from the reorganization, the first question is whether his relation, as attorney for Mrs. Born or Mrs Reilly, ended with the entry of the final order in each accounting. We hold that it did not. The accountings were part of the reorganization itself; indeed, it was the foundation of our decision in Central Hanover Bank & Trust Co. v. President and Directors of Manhattan Company[2] that they were a step in the collection of the Debtor's assets; and it was only for that reason that they were justiciable in bankruptcy at all over the vigorous protest of the "indenture trustees." True, it does not necessarily follow, because the accountings were part of the reorganization, that Silbiger's retainer extended beyond their conclusion; but that was in fact the case. The recoveries from the "indenture trustees" produced a fund to which the bondholders of the "Deficit Series" claimed to be entitled, so far as they were not necessary to pay off the "Surplus Series" and any other prior claims; and the "Construction Proceeding" was necessary precisely to decide the questions so arising. It is immaterial whether the possibility of a surplus had arisen before or after the accountings had been completed; whenever it did arise, the claim of the "Deficit Series" arose with it, and it would put an unreasonable limit upon the retainer of an attorney for "Deficit Series" bondholders to say that he did not under-

take to collect his clients' share of whatever the "Surplus Series" and other claimants did not absorb. At the very least, if he wished to take the side of the "Surplus Series," it was his duty to make sure that the interest of the "Deficit Series" was protected by competent and disinterested persons. Indeed, it is plain that Silbiger himself thought that he continued to represent the "Deficit Series" in the "Construction Proceeding," for on pages two and three of his reply brief in this court he argued that, if the interest of a "Surplus Series" were to be limited to the earnings of the collateral the "indenture trustee," the Manhattan Bank, should nevertheless not receive the surplus, but that it should go to the "Deficit Series."

He asserts, however, that he explained fully to Mrs. Born and Mrs. Reilly the situation and got leave to press the claims of the "Surplus Series." As to Mrs. Reilly, this was certainly not true. She was Eddy's sister and Eddy acted for her under a power of attorney by virtue of which Silbiger mistakenly supposed that Eddy might do so. In ordinary circumstances that would have been true; but, since Mrs. Reilly held only "Deficit Bonds" and was certain to lose by the success of the "Surplus Bonds," Eddy was not in a position to speak for her, for his interest and hers were in conflict. This must have been plain to Silbiger; and, if it was not, it should have been. Mrs. Born's husband acted for her; and the master found that Silbiger stated to him "his opinion as to the priority rights of the Public Bondholders in each Series and his intention to advocate such rights on behalf of Mr. Eddy." Also, that Born accepted the opinion of Silbiger as to the respective "rights" of the bondholders, and did not ask him to assert for his wife "any claim to a share in money which did not legally belong to her," but was satisfied to let him "proceed according to his (Silbiger's) opinion of what the legal rights of the

bondholders were." If we accept Born's testimony, he left everything to Silbiger, who did not explain to him the conflict between his wife's bonds and Eddy's and, even though Silbiger's memory be more reliable—as the master apparently thought —what he told Born was far from definite enough to authorize him to take sides against Mrs. Born. If anything could justify doing so—which we do not suggest —at least a clear explanation was necessary that, if the "Surplus Series" won, she was sure to lose. For the foregoing reasons we hold that Silbiger's retainer by Mrs. Born and Mrs. Reilly still bound him to represent them in the "Construction Proceeding."

But his duty was not confined to these two individuals. When he appeared for any of his three clients in any of the accounting proceedings, he appeared on behalf of all the bondholders of the series concerned in that accounting. That follows from his being paid for his services in each such proceeding out of the pockets of all those bondholders; for it is obvious that he could not lawfully take money from those to whom he had rendered no services.[3] Therefore, Silbiger became the attorney for all bondholders of those "Deficit Series," in whose accountings he had appeared; and when he argued the side of the "Surplus Series" in the "Construction Proceeding," it conflicted with his duty to all the bondholders of any "Deficit Series." Thus, the conflict in his duty was not limited to Mrs. Reilly and Mrs. Born, but extended to all bondholders of those "Deficit Series" for which he had at any time appeared.

Certainly by the beginning of the Seventeenth Century it had become a commonplace that an attorney must not represent opposed interests;[4] and the usual consequence has been that he is debarred from receiving any fee from either, no matter how successful his labors.[5] Nor will

---

3. Young v. Higbee Co., 324 U.S. 204, 65 S.Ct. 594, 89 L.Ed. 890. Berner v. Equitable Office Bldg. Corp., 2 Cir., 175 F.2d 218.

4. Shire v. King, Yelverton 32. Anonymous, 7 Modern 47.

5. United States v. Apple, 8 Cir., 292 F. 935, 940. Eisenmann v. Hazard, 218

the court hear him urge, or let him prove, that in fact the conflict of his loyalties has had no influence upon his conduct; the prohibition is absolute and the consequence is a forfeiture of all pay. Therefore Silbiger must be denied any allowance whatever, unless there is a distinction between a corporate reorganization and an ordinary suit *inter partes*. We think that there is such a distinction. The purpose of the prohibition is to insure the advantage to the client of the undivided allegiance of his attorney; and in situations in which the client is otherwise adequately protected, and the attorney is not paid in any part by the party whose side he has opposed, the result is inevitably a penalty. It must be confessed that in Loew v. Gillespie, supra,[6] the interests of the city appear to have been protected, and yet Judge Lehman denied the attorney any pay whatever; nevertheless, we think that in a corporate reorganization proceeding it is reasonable not to impose an entire forfeiture of the allowance, when it comes in no part out of any group that can have been prejudiced by the attorney's divided allegiance. In the case at bar the allowance will come out of the "Surplus Series," which won all it could; hence the only question is as to possible prejudice to the "Deficit Series." How far should that effect a penalty? The "New Corporation" represented the interests of the "Deficit Series" in the "Construction Proceeding," and it is at least doubtful whether, if Silbiger had presented the situation to the district court, and asked to be freed of his duties to those series in order to espouse the side of the "Surplus Series," the judge would have thought it necessary that an attorney should be appointed in addition to him who represented the "New Corporation." We agree that Silbiger failed in his duty when he did not present this matter to the court and learn its pleasure; and we agree that for that failure he may not have a full allowance; but we are disposed to make an exception from the usual consequence which imposes forfeiture of all pay. It appears to us an adequate penalty, if we follow the course we took in Berner v. Equitable Office Building Corporation, supra,[7] where, although the evidence did not show that Berner, who was also an attorney, had violated § 249 of the Bankruptcy Act by himself buying any of the Debtor's shares, he had given information to a relative on which the relative had bought them. How far the penalty should be mitigated, we leave to the district court, although there is authority for our exercising our own discretion in the first instance.[8] We will, however, say now—all the issues having been fully argued—that we should regard it as an abuse of discretion not to cut the allowance by at least one-third. If the "New Corporation" wishes, it may go before the district court, and seek a still further cut. We do not wish to indicate that we think a cut of one-third is enough, for we recognize that we are departing from a doctrine that has been applied with great severity. Within the limit we have set, we leave the decision to the district court, although the question must not be referred to a master. If the "New Corporation" does not wish to press the matter further, the allowance will stand at two-thirds of the sum awarded.

### The Allowances of Miller and of Weil, Gotshal and Manges.

The objections to the allowances of Miller and of Weil, Gotshal and Manges are the same, and we may consider them as one. The clients of each held no bonds in the Debtor in 1934, when the organization petition was filed, but bought and sold bonds of this series indiscriminately from time to time, as any seemed to them

N.Y. 155, 112 N.E. 722; Herrick v. Cately, 1 Daly 512; Loew v. Gillespie, 90 Misc. 616, 153 N.Y.S. 830, affirmed 173 App.Div. 889, 157 N.Y.S. 1133; Strong v. International Bldg. Loan & Investment Union, 183 Ill. 97, 55 N.E. 675, 47 L.R.A. 792; Trimble v. Guardian Trust Co., 244 Mo. 228, 148 S.W. 934.

6. 90 Misc. 616, 153 N.Y.S. 830, affirmed 173 App.Div. 889, 157 N.Y.S. 1133.

7. 175 F.2d 218.

8. Fuller v. Memphis Street Railway Co., 6 Cir., 110 F.2d 577.

to offer opportunities for speculative profit. Miller's clients always held and traded in more bonds of "Surplus Series" than of "Deficit Series"; Weil, Gotshal and Manges' clients' dealings were more in bonds of "Deficit Series." When the "Construction Proceeding" began, the clients of both these attorneys retained them to intervene on their behalf in the Fifth Series—a "Surplus Series"—; and before the master and in the district court they pressed the claims of these bonds for full interest out of the collateral. When they were unsuccessful in that court, Miller did not appeal, but Weil, Gotshal and Manges did; and the allowances awarded to both were apportioned against all "Surplus Series," as in the case of Silbiger. The "New Corporation" raises two objections to these allowances. First, it argues that, since the clients held bonds in both "Surplus Series" and "Deficit Series," and filed claims in each, they assumed a fiduciary relation to the creditors in both series, in spite of the conflict between them. The attorneys made no effort to ascertain whether such a conflict existed, but they were chargeable with notice that it existed, and by acting for the "Surplus Series" became a party to their clients' breach of trust. Second, the "New Corporation" argues that, when their clients retained the attorneys to intervene in the Fifth Series, they became "representatives" of all the bonds in that series, and that § 249 forbade their trading in the bonds of that series upon pain of losing any right to be reimbursed for their expenses, including the fees of their attorneys. Miller had an understanding with his clients that they were to pay him for his services, so far as he was not fully paid by any allowance; although there is no evidence of such an agreement in the case of Weil, Gotshal and Manges.

■ We think it plain that the first objection is not valid. The creditor of a corporation in reorganization who holds two conflicting claims is warranted in filing both of them in the alternative; for by merely filing them, he does not assume any duty to either of the classes among which his claims are included. To hold otherwise would force him to choose at his peril which claim should win and forfeit the other if he turned out to be wrong; we can conceive of no reason which should put him in such a predicament. Moreover, after he has decided which one of his claims offers him the larger dividend, we can equally see no reason why he should not press that claim to a successful issue at the expense of the other claim. True, in so doing he assumes a fiduciary duty towards the members of the class whose position he adopts as his own; but he does not do so as to the members of the other class. Therefore, the clients of Miller, and of Weil, Gotshal and Manges assumed no duty to the bonds of any "Deficit Series"; and in consequence their attorneys may be paid by allowances out of the "Surplus Series."

■ Although the second objection of the "New Corporation" is more plausible, we think that it too is not valid. So far as the second sentence of § 249 is directed against any "committee or attorney" who trades in securities of the corporation, it does not cover the case at bar, because the clients were not members of any "committee," and the attorneys did not themselves trade in the bonds. If the clients were within the section at all, it was because they were "acting * * * in a representative or fiduciary capacity," "other" than as a "committee"; and, since, by retaining attorneys to press their claims in the Fifth Series, they did assume some sort of "fiduciary" relation towards all the bondholders of that series, we will assume for argument, that they acted "in a representative or fiduciary capacity" within the meaning of § 249. However, although upon that assumption the clients lost any right to compensation or reimbursement, we see no reason why their disability should extend to their attorneys, even though we assume—what is certainly open to debate—that an attorney is charged with notice when his client trades in securities of the corporation. Judge Coleman has decided that the disability is not

so extended,[9] and we agree. The section does not expressly impute any fault to the attorney for his client's misconduct—assuming that that is not too strong a word. It only declares what his own disability shall be, if on his own account he buys and sells. To charge him with his client's dealings would compel him, at the risk of losing all his labor, either to keep an eye upon those dealings (which in practice would be so irritating as to imperil the continuance of their relations); or blindly to put any right to be paid at his client's mercy. Attorneys repeatedly accept retainers in such cases in reliance upon the allowances they will get from the courts, and no doubt often from clients of whose financial responsibility they are not sure. Why should they be compelled to run the chance that the client, over whom they can exercise no control, may find it profitable to speculate in the corporation's securities? Indeed that speculation is in itself one to which Congress attached no further disability than the loss of compensation or reimbursement, which is a far milder consequence than attends the breach of full-fledged fiduciary duties.

On the other hand, we will not foreclose the possibility that there may be recourse against the client if he has agreed, as Miller's client did, to pay the attorney so far as the attorney's allowance does not do so.[10] Were no such recourse available, the result would be that the client would secure the services of that attorney at the expense of those who pay the allowance; and it would follow that the client benefited by the amount he would have paid the attorney, if the attorney were denied any allowance, less so much of the allowance as is in fact deducted from the client's dividend. Assuming that the client is a "person in a representative or fiduciary capacity," and assuming that that result is within the words, "reimbursement for costs and expenses incurred," perhaps it would be proper to deduct the amount we have mentioned from the client's dividends, so far as these will suffice; and, so far

as they will not, to proceed against the client by subrogation of the attorney's claim, if any, against him. Upon these possibilities we do not pass, for the clients are not parties to this proceeding and have not been heard. The allowances to Miller and that to Weil, Gotshal and Manges were proper and should be allowed.

### Nemerov's Allowance.

The leave to appeal was "limited to the question of conflict of interest represented"; and the "New Corporation" concedes that Nemerov did not "serve conflicting interests." Hence, although it is hard to see why he should have been entitled to this largesse, we have no jurisdiction over his allowance.

The disbursements on this appeal of Miller and those of Weil, Gotshal and Manges will be allowed; so far as any disbursements were occasioned by the appeal from Silbiger's allowance, the "New Corporation" may collect them out of his allowance.

Order modified; and cause remanded for further proceedings in accordance with the foregoing opinion.

### Petitions for Rehearing

PER CURIAM.

We made a mistake saying in our opinion that "the 'New Corporation' represented the interests of the 'Deficit Series' in the 'Construction Proceeding.'" It is true, as the "New Corporation" says, that it refused to take sides in that proceeding; on the other hand, it is also true that Prudence Realization Corporation did take sides, and in Points II and III of its brief in this court it argued that any interest payable upon the "Surplus Series" should be limited to the income earned upon the collateral pledged to secure those series. The sentence in question will, therefore, be amended so as to read as follows:

"The Prudence Realization Corporation represented the interests of the 'Deficit Series' in the 'Construction Proceeding,' and it is at least doubtful whether, if Sil-

9. In re Mortgage Guarantee Company, D.C., 40 F.Supp. 226, 237, 238.

* In re Inland Gas Corporation, D.C., 73 F.Supp. 785, 792.

biger had presented the situation to the district court, and asked to be freed of his duties to those series in order to espouse the side of the 'Surplus Series,' the judge would have thought it necessary that an attorney should be appointed in addition to him who represented the Prudence Realization Corporation."

Petitions denied.