In the Matter of **HUDSON & MANHAT-TAN RAILROAD COMPANY**, Debtor.
**Lamb, Blake, Hutchinson & Dunne**
and
**Strasser, Spiegelberg, Fried & Frank,**
**Appellants,**
**Hudson & Manhattan Corporation,**
**Appellee.**
No. 139, Docket 28972.

United States Court of Appeals
Second Circuit.

Argued Oct. 29, 1964.

Decided Dec. 8, 1964.

Marshall, Circuit Judge, dissented.

Raymond J. Lamb, Jersey City, N. J. (Lamb, Blake, Hutchinson & Dunne, Jersey City, N. J., on the brief), for appellants Lamb, Blake, Hutchinson & Dunne pro se.

Leon Silverman, New York City (Strasser, Spiegelberg, Fried & Frank and Edwin H. Nordlinger, New York City, on the brief), for appellants Strasser, Spiegelberg, Fried & Frank pro se.

David W. Peck, New York City (Theodore N. Tarlau, New York City, on the brief), for appellee.

Richard V. Bandler, Assistant Regional Administrator, Securities & Exchange Commission, New York, N. Y. (David Ferber, Solicitor, Securities & Exchange Commission, on the brief), for Securities & Exchange Commission.

Before LUMBARD, Chief Judge, and HAYS and MARSHALL, Circuit Judges.

LUMBARD, Chief Judge:

Two law firms appeal, by leave of this court,[1] from an order of the United States District Court for the Southern District of New York which fixed compensation for services to the estate. Lamb, Blake, Hutchinson & Dunne was allowed only $50,000 on its application for $107,350 and Strasser, Spiegelberg, Fried & Frank was allowed no fee. 224 F.Supp. 815 (S.D.N.Y.1963). The re-

1. Our permission was required under § 250 of the Bankruptcy Act, 11 U.S.C. § 650 (1958).

organized company asks us to affirm, but the Securities & Exchange Commission urges allowance of an additional $25,000 to the Lamb firm and of $4,000 to the Strasser firm, as it did in the district court. We modify the order to allow Lamb, Blake, Hutchinson & Dunne additional fees of $15,000 and to allow $6,000 plus disbursements to Strasser, Spiegelberg, Fried & Frank.

■ The Lamb firm was retained in January 1955 to represent the trustee in New Jersey tax proceedings and to work with the trustee's general counsel in New Jersey matters. An order of June 29, 1955 granted it an interim allowance of $3,000 and provided that it could apply in June and December of each year for an interim allowance for the preceding six months; the allowance was not to exceed $3,000 but was to be "without prejudice to the future filing of applications for allowance for additional compensation for such services." The firm filed thirteen interim applications, of which six were for less than $3,000.

Interim allowances to the firm totalled $34,300. It sought a final allowance of $73,050, or a total of $107,350, for an estimated 4,294 hours at $25 per hour. The district judge allowed only an additional $15,700; he said that he could not "understand why, if the firm was entitled to semi-annual payments of $3,000 for interim allowances, and if they now feel that the payments which they received were inadequate, they failed to ask for full interim allowances at the times when they could have asked for them."

The firm did not keep accurate time records. Current entries showed only the nature of the work, and time was not even estimated until preparation of each interim application. Moreover, the SEC representative who examined the firm's records concluded that the estimates probably overstated the time spent, and the firm concedes that its usual charge was $20 per hour and not $25 per hour. In view of these facts, we do not think that the firm is entitled to the $75,000 recommended by the SEC. However, we also think that the district judge erred

in giving weight to the fact that the firm on six occasions did not seek the maximum interim allowance; this only encourages firms to apply for the maximum allowance regardless of the value of the services rendered. Accordingly, we find that the Lamb firm should have been allowed a total of $65,000.

■ We wish to emphasize that any attorney who hopes to obtain an allowance from the court should keep accurate and current records of work done and time spent. Lawyers are well aware that, especially where services of the nature here involved are spread over a period of time and ultimate payment is virtually assured, they are valued principally on the basis of the time required. There is no excuse for an established law firm to rely on estimates made on the eve of payment and almost entirely unsupported by daily records or for it to expect a court to do so.

The Strasser firm requested $29,300 for services between September 17, 1957 and December 31, 1960. During this period it represented Jack Marqusee, a major holder of Adjustment Income Bonds. His income bond holdings amounted to $250,000 face value in September 1957 and to $1,662,000 by the middle of 1960. He sold no income bonds during the period of claimed service, although he did sell 30 refunding bonds on one occasion.

The district judge denied any allowance, saying only that "there is no reason why they should be paid by the estate. The services are not compensable services within the meaning of the Statute; no allowance is warranted." The court apparently had in mind § 249 of the Bankruptcy Act, 11 U.S.C. § 649, (1958), which bars compensation or reimbursement to any committee or attorney "who at any time after assuming to act in such capacity has purchased or sold such claims or stock."

The firm did not itself purchase or sell any securities, and we find nothing in Marqusee's continued purchases and one sale which should bar his attorneys from receiving an allowance for any services

**116**

rendered to the estate. See In re Mortgage Guarantee Co., 40 F.Supp. 226, 238 (D.Md.1941); Silbiger v. Prudence Bonds Corp., 180 F.2d 917, 922–23, 2 Cir., cert. denied, 340 U.S. 831, 71 S.Ct. 37, 95 L.Ed. 610 (1950). As the Commission points out, "the record indicates no problems of shifting interests and contains no indication that the knowledge gained by the applicant was used to assist Mr. Marqusee's trading." We agree with the Commission that, where a client has traded in the debtor's securities, weight must be given to the purpose for which the attorney has appeared in the proceeding. It cannot be said here that the Strasser firm appeared for the purpose of aiding its client in trading. Had it done so, its fees would properly have been denied. In re Inland Gas Corp., 73 F.Supp. 785, 792 (E.D.Ky.1947). Nor is there any suggestion that Marqusee used the firm's appearance to facilitate his trading.

There seems to be a substantial basis for the firm's claim that its efforts were calculated to obtain a fairer plan from the view of the income bondholders, including its client. After Amendment Number Two to the plan was defeated, Marqusee, through the Strasser firm, supported Amendment Number Three, which was finally confirmed on June 29, 1960. Having in mind all the circumstances, we conclude that the Strasser firm is entitled to some compensation, as its services did contribute to the administration of the estate, § 243 of the Bankruptcy Act, 11 U.S.C. § 643 (1958), and that they should receive $6,000 together with $142.84 for disbursements.

The order of the district court is modified in accordance with this opinion.

MARSHALL, Circuit Judge (dissenting):

I respectfully dissent. Our review is, of course, limited to consideration of possible errors of law or abuse of discretion. In the case of the Lamb firm, while Judge Dawson did refer to the failure of the firm to request maximum interim allowances, he had already concluded that the time records of the firm were estimates of "probable" time spent rather than accurate statements of actual time spent. As to the Strasser firm, Judge Dawson concluded that its services were more personal to their client than to the estate and concluded that such "services are not compensable services within the meaning of the statute." I fear that my brothers are erroneously substituting their judgment for that of Judge Dawson. I would affirm.