## Commonwealth v. Madden's Ex'r.

(Decided June 23, 1936.)

HARRY D. KREMER and SAMUEL H. COLE for appellant.

WILLIAM MARSHALL BULLITT, BRUCE & BULLITT, LEO T. WOLFORD, MIDDLETON MILLER, WILLIAM H. ABELL and WILLIAM A. MINIHAN for appellee.

OPINION OF THE COURT BY JUDGE STITES—Reversing.

John E. Madden died on November 3, 1929, a resident of Fayette county, Ky. Shortly after his death. this proceeding was filed for the purpose of taxing certain intangible personal property owned by Mr. Madden and alleged to have been omitted from assessment during the years 1924 to 1929, inclusive. The administrators of Mr. Madden's estate admitted his failure to list some of the property, and it was thereupon retroactively assessed without contest. The only questions presented for our consideration are: (1) The power of the state of Kentucky to tax securities owned by a partnership of which Mr. Madden was a member; and (2) the rate of taxation to be applied to deposits in New York banks to the individual credit of the decedent during the period in question. The trial court held that the partnership securities, all of which were pledged with brokers on margin accounts in New York. and were carried principally in "street names," had acquired a business situs in New York, and were not taxable in Kentucky. The court likewise held that the deposits in New York banks to Mr. Madden's individual account were subject to a tax of but 10 cents on the $100 (the rate applied to deposits in banks in Kentucky), and that to tax these deposits as other credits generally (at 50 cents on the $100) would be a denial of equal protection. The revenue agent has appealed. We will consider the questions in the order stated above.

For a number of years Mr. Madden was engaged in operations on the New York Stock Exchange as an equal partner with his two sons, one of whom was a resident of Oklahoma and the other a resident of Iowa. Appellant complains of this finding, and urges that certain of the brokerage accounts were operated for Mr. Madden's individual benefit; but we think the evidence amply supported the conclusion that all of these transactions in brokerage accounts were on behalf of the partnership. It was likewise established that the operations of the partnership were conducted exclusively in New York. Mr. Madden spent the greater part of each year in New York City and personally attended to the buying and selling of most of the securities there held.

It is established that the partnership assets were invested and reinvested on the New York Stock Exchange by Mr. Madden and at times by one or the other of his two sons. Clearly, the situs of these assets for ad valorem taxation was in New York. Compare Blodgett v. Silberman, 277 U. S. 1, 48 S. Ct. 410, 72 L. Ed. 749. Whether the situs was likewise in New York for inheritance tax purposes, it is, of course, unnecessary here to decide. See Buck v. Beach, 206 U. S. 392, 27 S. Ct. 712, 51 L. Ed. 1106; 11 Ann. Cas. 732; Wheeler v. Sohmer, 233 U. S. 434, 34 S. Ct. 607, 58 L. Ed. 1030. Any doubt that may have existed by virtue of recent decisions of the Supreme Court of the United States as to whether or not the maxim of "mobilia sequuntur personam" would be invariably applied to intangible property and "business situs" no longer recognized, has been set at rest by the decision of that court in the case of Wheeling Steel Corp. v. Fox, 56 S. Ct. 773, 776, 80 L. Ed. 809 (decided May 18, 1936). The court there considered the question of the validity of an ad valorem property tax laid by West Virginia upon the accounts receivable and bank deposits in other states of a Delaware corporation having its principal office in West Virginia. In determining as a matter of fact that the methods of doing business by the corporation were such as to localize its intangible property (not taxed elsewhere), for purposes of taxation, in West Virginia, the court said:

"The tax is not a privilege or occupation tax. It is not a tax on net income. See Hans Rees' Sons v. North Carolina, 283 U. S. 123, 133, 51 S. Ct. 385, 75 L. Ed. 879. It is an ad valorem property tax. We have held that it is essential to the validity of such a tax, under the due process clause, that the property shall be within the territorial jurisdiction of the taxing state. This rule receives its most familiar illustration in the case of land. The rule has been extended to tangible personal property which is thus subject to taxation exclusively in the state where it is permanently located, regardless of the domicile of the owner. Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 204, 206, 26 S. Ct. 36, 50 L. Ed. 150, 4 Ann. Cas. 493; Frick v. Pennsyl-

vania, 268 U. S. 473, 489, 45 S. Ct. 603, 69 L. Ed. 1058, 42 A. L. R. 316. We have said that the application to the states of the rule of due process arises from the fact 'that their spheres of activity are enforced and protected by the Constitution, and therefore it is impossible for one state to reach out and tax property in another without violating the Constitution.' United States v. Bennett, 232 U. S. 299, 306, 34 S. Ct. 433, 437, 58 L. Ed. 612. Compare Burnet v. Brooks, 288 U. S. 378, 401, 53 S. Ct. 457, 77 L. Ed. 844, 86 A. L. R. 747. When we deal with intangible property, such as credits and choses in action generally, we encounter the difficulty that by reason of the absence of physical characteristics they have no situs in the physical sense, but have the situs attributable to them in legal conception. Accordingly we have held that a state may properly apply the rule mobilia sequuntur personam and treat them as localized at the owner's domicile for purposes of taxation. Farmers' Loan & Trust Co. v. Minnesota, 280 U. S. 204, 211, 50 S. Ct. 98, 74 L. Ed. 371, 65 A. L. R. 1000. And having thus determined 'that in general intangibles may be properly taxed at the domicile of their owner,' we have found 'no sufficient reason for saying that they are not entitled to enjoy an immunity against taxation at more than one place similar to that accorded to tangibles.' Id., 280 U. S. 204, at page 212, 50 S. Ct. 98, 100, 74 L. Ed. 371, 65 A. L. R. 1000. The principle thus announced in Farmers' Loan & Trust Co. v. Minnesota has had progressive application. Baldwin v. Missouri, 281 U. S. 586, 50 S. Ct. 436, 74 L. Ed. 1056, 72 A. L. R. 1303; Beidler v. South Carolina Tax Commission, 282 U. S. 1, 51 S. Ct. 54, 75 L. Ed. 131; First National Bank v. Maine, 284 U. S. 312, 328, 329, 52 S. Ct. 174, 177, 76 L. Ed. 313, 77 A. L. R. 1401. But despite the wide application of the principle, an important exception has been recognized.

"In the case of tangible property, the ancient maxim, which had its origin when personal property consisted in the main of articles appertaining to the person of the owner, yielded in

modern times to the 'law of the place where the property is kept and used.' First National Bank v. Maine, supra. It was in view 'of the enormous increase of such property since the introduction of railways and the growth of manufacturers' that it came to be regarded as 'having a situs of its own for the purpose of taxation, and correlatively to exempt at the domicile of its owner.' Union Refrigerator Transit Co. v. Kentucky, supra, 199 U. S. 194, at page 207, 26 S. Ct. 36, 39, 50 L. Ed. 150, 4 Ann. Cas. 493. There has been an analogous development in connection with intangible property by reason of the creation of choses in action in the conduct by an owner of his business in a state different from that of his domicile. New Orleans v. Stempel, 175 U. S. 309, 20, S. Ct. 110, 44 L. Ed. 174; Bristol v. Washington County, 177 U. S. 133, 20 S. Ct. 585, 44 L. Ed. 701; State Board of Assessors v. Comptoir National, 191 U. S. 388, 24 S. Ct. 109, 48 L. Ed. 232; Metropolitan Life Insurance Co. v. New Orleans, 205 U. S. 395, 27 S. Ct. 499, 51 L. Ed. 853; Liverpool & L. & G. Insurance Co. v. Board of Assessors for Parish of Orleans, 221 U. S. 346, 31 S. Ct. 550, 55 L. Ed. 762, L. R. A. 1915 C, 903.

"These cases, as we said in Farmers' Loan & Trust Co. v. Minnesota, supra, 280 U S. 204, at page 213, 50 S. Ct. 98, 101, 74 L. Ed. 371, 65 A. L. R. 1000, 'recognize the principle that choses in action may acquire a situs for taxation other than at the domicile of their owner, if they have become integral parts of some local business.' We adverted to this reservation in Beidler v. South Carolina Tax Commission, supra, 282 U. S. 1, at page 8, 51 S. Ct. 54, 75 L. Ed. 131, and in First National Bank v. Maine, supra, 284 U. S. 312, at page 331, 52 S. Ct. 174, 76 L. Ed. 313, 77 A. L. R. 1401."

Applying these principles to the case at bar, we are compelled to recognize that the business of the Madden partnership was localized in New York. All of the partnership accounts were carried with brokers there, the securities purchased and sold were carried in the names of New York brokers, and the trading

was almost universally carried on in person by Mr. Madden at the brokerage offices. In fact, the testimony indicates that he was more often sojourning in New York than in his technical legal residence in Kentucky. We conclude, therefore, that Mr. Madden's interest in the assets of the partnership was localized in New York and beyond the power of Kentucky to tax. His interest in the going partnership was not a thing apart from the partnership itself.

As to the taxation of general deposits in the name of Mr. Madden in New York banks, no question of situs is presented. It is admitted that these deposits are taxable in Kentucky, but it is urged that the rate to be applied must be that fixed on deposits in banks organized under the laws of this state or national banks doing business in this state, and that to apply to these deposits the rate applicable to intangible property generally is to deny to appellee the equal protection of the law secured to him by the Fourteenth Amendment to the Constitution of the United States. Whether or not this contention is correct must depend, of course, upon the reasonableness of the classification made by section 4019a-1 of the Kentucky Statutes, placing the deposits in banks, resident in this state, in a separate class for purposes of taxation, and fixing thereon a rate of but 10 cents on the $100, as compared to the 50-cent rate applicable to intangibles generally.

It cannot be disputed that the classification made by section 4019a-1 is limited by its terms to the banks organized under the laws of this state and national banks doing business here. The deposits in nonresident banks, therefore, must be taxed at the general intangible rate unless to do so would be contrary to the Fourteenth Amendment. Perhaps the most quoted discussion of the rules applicable to classification for taxation under the equal protection clause is found in the case of Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 10 S. Ct. 533, 535, 33 L. Ed. 892, where the court said:

"The provision in the fourteenth amendment, that no state shall deny to any person within its jurisdiction the equal protection of the laws, was not

intended to prevent a state from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries, and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the state in framing their Constitution. But clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition. It would, however, be impracticable and unwise to attempt to lay down any general rule or definition on the subject that would include all cases. They must be decided as they arise. We think that we are safe in saying that the fourteenth amendment was not intended to compel the states to adopt an iron rule of equal taxation. If that were its proper construction, it would not only supersede all those constitutional provisions and laws of some of the states, whose object is to secure equality of taxation, and which are usually accompanied with qualifications deemed material, but it would render nugatory those discriminations which the best interests of society require; which are necessary for the encouragement of needed and useful industries, and the discouragement of intemperance and vice; and which every state in one form or another, deems it expedient to adopt.''

Again, in Watson v. State Comptroller, 254 U. S. 122, 41 S. Ct. 43, 44, 65 L. Ed. 170, it is said:

''Any classification is permissible which has a reasonable relation to some permitted end of govern-

mental action. * * * It is enough, for instance, if the classification is reasonably founded in 'the purposes and policy of taxation.' "

Plainly, the placing of local bank deposits in a separate class, and according to them a more favorable rate than is assessed against other intangible property, "is reasonably founded in the purposes and policy of taxation." At the time that the 1917 classification law was enacted (Acts 1917, c. 4), following the amendment to section 171 of the State Constitution (see Acts 1914, c. 94), the Legislature had before it the report of the Special Tax Commission, which showed that, under the old general property tax, out of $123,000,000 of bank deposits in the state, only $12,-847,868—or a little over 10 per cent.—were returned for taxation (Report, Special Tax Commission, 1912-1914). It was likewise a matter of general information that a large part of the money on deposit in banks went into hiding on the tax date, and there was a corresponding contraction in the assets of the banks at a time when crops were moving, and an increase, rather than a decrease, in credit was necessary. In order to meet this economic situation, as well as the practical exigencies of taxation, a rate was fixed sufficiently low to encourage the building up of deposits on the tax date, and the banks were required to report and pay the tax on this species of property as agents for their depositors. The reasonableness of this provision is demonstrable in the fact that more taxes are actually raised under the lower rate than were paid when the full rate was applied under the old general property tax law. Obviously, therefore, the classification is a valid one so far as it affects property within the state.

It is argued, however, that the deposits in nonresident banks must be accorded the same favorable classification, and we are cited to the recent decision of the Supreme Court of the United States in the case of Colgate v. Harvey, 296 U. S. 404, 56 S. Ct. 252, 256, 80 L. Ed. 225, 102 A. L. R. 54, wherein a statute of Vermont was held to violate the privileges and immunities clause of the Federal Constitution in taxing the income derived from loans outside of the state while exempting similar loans made within the state. How-

ever, the opinion of the court in that case itself states the distinguishing feature between that case and this. The court said:

"We are unable to find in the provision any public purpose which can be subserved by making the taxation of income from loans dependent merely upon the adventitious circumstance as to the place of making the loan."

In the case at bar there is an obvious public purpose to be subserved and an obvious quid pro quo to be received by the state from its local banks as distinguished from nonresident banks. There is no way of guaranteeing that deposits in banks of other states will be reported for taxation by those banks' or that the tax will be paid by such banks and charged to the account of the depositor, as is the case with local banks. Similarly, there is no public reason for seeking to build up the deposits in nonresident banks on the taxing date, and consequently no reason why the deposits in nonresident banks should be accorded a privilege not granted to other credits generally. There is no "clear and hostile discrimination" embodied in section 4019a-1 directed against deposits in nonresident banks. Any discriminaton that exists is merely incidental to a legitimate classification, and results simply from the lack of power in the state to reach banks beyond its jurisdiction, and from the absence of the sound economic reasons which justify the classification when applied to domestic banks but which fail when extended beyond the boundaries of the state. A nonresident who deposits his money in a Kentucky bank, and permits it to acquire a taxable situs here, is accorded the same favorable rate that is fixed on the deposit of a resident of this state. If a resident of this state chooses to place his funds in a foreign bank, he, in effect, himself selects the classification of his property for taxation. Metropolis Theatre Co. v. Chicago, 228 U. S. 61, 33 S. Ct. 441, 57 L. Ed. 730. We can find in these facts no denial of equal protection nor any abridgement of privileges and immunities.

It follows that the judgment of the trial court is erroneous in so far as it applies the 10-cent rate in-

stead of the 50-cent rate to the deposits of Mr. Madden in the New York Banks.

Judgment reversed for proceedings consistent herewith.