**In re KENTUCKY FUEL GAS CORPORATION.**

**REEVES, Com'r of Revenue of Kentucky, v. WILLIAMSON.**

No. 8973.

Circuit Court of Appeals, Sixth Circuit.

April 17, 1942.

H. Appleton Federa, of Frankfort, Ky. (Hubert Meredith, of Frankfort, Ky., on the brief), for appellant.

[2] Ransom v. Kreeger Store, La.App., 158 So. 600.

Robert T. Caldwell, of Ashland, Ky. (Porter M. Gray, of Ashland, Ky., on the brief), for appellee.

Before SIMONS, ALLEN, and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

This appeal arises out of the refusal of the appellee, trustee in bankruptcy of a corporation in reorganization, to pay a state tax upon funds of the debtor deposited pursuant to Title 11, U.S.C., Section 101a, 11 U.S.C.A. § 101a, in a postal savings depository of the United States situated in Kentucky, for which the appellee during 1938 held certificates of deposit in the amount of $275,000. The appellant is the Commissioner of Revenue for Kentucky, who was permitted to intervene in the bankruptcy proceedings for the purpose of asserting a claim for such taxes together with accrued interest and penalty thereon. Sections 4077 and 4019, Baldwin's 1939 Supplement to Carroll's Kentucky Statutes, prescribe a tax upon deposits in state banks and national banks of the state at ten cents per one hundred dollars valuation, upon real estate at five cents per one hundred dollars valuation, and upon all other property directed to be assessed at fifty cents for each one hundred dollars valuation. The postal savings deposits and the certificates representing them held by the appellee were considered to be within the latter classification and were assessed at the fifty cent rate.

The question is whether or not imposition of the tax constitutes a legitimate exercise of the state taxing power. The District Court held the assessment invalid and dismissed the petition, upon the ground that taxation of postal savings deposits constitutes a direct interference by the state with the exercise of federal power and upon the further ground that taxation at the rate imposed places a discriminatory burden on an activity of the federal government.

Postal savings depositories are established by the federal government in accordance with Title 39, U.S.C., Section 751 et seq., 39 U.S.C.A. § 751 et seq. When a postal savings account is opened the depositor receives a pass-book, or, as in this case, a certificate of deposit, entitling him to withdraw the whole or any part of the fund deposited upon demand (Section 758). The funds received are required to be deposited in solvent banks in the city, town, village or locality in which the deposit is made, or if there is no qualified bank in that locality, in the bank most convenient thereto (Section 759). Withdrawals are required to be paid from the deposits in the state and in the community in which the deposit is made, so far as is practicable (Section 758). The faith of the United States is pledged to the payment of the deposits (Section 766), and this pledge is carried upon the face of the certificate of deposit involved herein. Under Section 759, "When, in the judgment of the President, the general welfare and interests of the United States so require, the board of trustees may invest all or any part of the postal savings funds, except the reserve fund of 5 per centum herein provided for, in bonds or other securities of the United States." The record shows that as of the close of the month of June, 1940, there was a balance due postal savings depositors in the United States of approximately $1,293,000,000, and that over 91 per cent of the postal savings funds has been invested in securities of the United States.

The creation and operation of the postal savings system are within the constitutional powers of the national government. Therefore, the activities carried on through the postal savings system are governmental functions which stand on a parity with all other activities carried on by that government in respect to "their constitutional immunity" from state taxation. Graves v. People of State of New York ex rel. O'Keefe, 306 U.S. 466, 477, 59 S.Ct. 595, 83 L.Ed. 927, 120 A.L.R. 1466; Pittman v. Home Owners' Loan Corp., 308 U.S. 21, 32, 60 S.Ct. 15, 84 L. Ed. 11, 124 A.L.R. 1263; Federal Land Bank of St. Paul v. Bismarck Lumber Co., 314 U.S. 95, 102, 62 S.Ct. 1, 86 L. Ed. ——.

The nature and practical importance of the functions of the system have been aptly summarized by the Court of Appeals of the District of Columbia in Farley v. Albers, 72 App.D.C. 136, 112 F.2d 401, certiorari denied 311 U.S. 653, 61 S.Ct. 37, 85 L.Ed. 418:

"Taken as a whole, the system constitutes a part of both the postal and fiscal operations of the government. Profits are treated as postal revenue, and the

fund is held in reserve for emergency use of the government and to facilitate government refinancing operations by the purchase of government bonds. It is safeguarded as other public moneys, and the obligation to the depositors is the pledge of the United States." 112 F.2d page 402.

Obviously postal savings deposits are not deposits either in a state bank or in a national bank situated in the state, and therefore they do not come within the ten cent tax upon such deposits imposed by the Kentucky statute. From every standpoint, however, so far as the depositor is concerned, the postal savings deposit is the equivalent of a local savings bank deposit. The depositor receives either a passbook or a postal savings certificate, his money is withdrawable on demand, and an obligation of the United States is created which is at least analogous to the relationship between a bank and its depositors. The state banks and national banks within the state compete with postal savings depositories for the money of the local depositors. The local feature of the transaction is emphasized by the statutory provisions cited, which require that money received for deposit, as here, at a local depository, shall be deposited in banks within the state and so far as possible within the community. If withdrawal of the deposit is sought, payment is to be made so far as possible from deposits within the state. The ten cent tax provision which applies to deposits in banks, however, does not cover postal savings, and the only provision of the Kentucky statutes applicable to postal savings deposits is that which requires their assessment at fifty cents for each one hundred dollars (Section 4019). From a practical aspect, a tax upon these deposits which is five times the tax imposed upon deposits in all banks in Kentucky is plainly discriminatory unless the holding in Madden, Ex'r, v. Kentucky by Reeves, Com'r, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590, 125 A.L.R. 1383, as contended by appellant, requires a different conclusion. That case held that a statute by which the state of Kentucky taxed deposits in banks outside the state at fifty cents per each one hundred dollars, is consistent with the due process, equal protection, and privileges and immunities clauses of the Fourteenth Amendment. The statutes there construed are the same

as those involved here. The question of the application of the statute to postal savings deposits was not presented.

In the Madden case, the court, calling attention to the broad discretion as to classification possessed by a state legislature in the field of taxation, emphasized the difficulty in collecting the tax on deposits outside the state as compared with the tax on local deposits, and held the classification not invalid under the Fourteenth Amendment. The court declared that the classification may have been founded in the comparative difficulty and expense of tax collections upon bank deposits within and outside the state respectively. In a note (309 U.S. page 89, 60 S.Ct. 406, 84 L.Ed. 590, 125 A.L.R. 1383) the court reviews the history of the legislation. It describes the high rate of taxation on intangibles in Kentucky prior to the constitutional amendment of 1916 which permitted classification, and states that this high rate of taxation led to widespread evasion of the tax in case of bank deposits by withdrawals for deposit outside the state. The purpose of the enactment of §§ 4077 and 4019, we therefore conclude, was to reach out-of-state deposits.

Here the deposits were made within Kentucky through the postal depository office at Ashland, Kentucky. Appellant claims, however, that the provision of Title 39, U.S.C., Section 762, 39 U.S.C.A. § 762, that "No person connected with the Post Office Department shall disclose to any person other than the depositor the amount of any deposits, unless directed so to do by the Postmaster General," places the instant case squarely within the rule of the Madden case, supra. However, the written personal property return required of resident taxpayers such as the insolvent debtor enables the Kentucky tax authorities to ask the direct question as to the existence of postal savings deposits and certificates representing them, and makes it difficult for the taxpayer to conceal such deposits made within the state or the certificates therefor.

A study of the Kentucky statutes, Sections 4077 and 4019, supra, leads to the reasonable inference that the legislature of Kentucky, when it subjected deposits in "national banks within the state" as well as state banks to the ten cent tax provision, considered that it was covering

the whole field of local bank deposits. It did not in Section 4019 specifically tax postal savings at the fifty cent rate, but applied the tax to "all other property" directed to be assessed for taxation as provided by law. We think this catchall provision, in view of the history detailed in the Madden case, supra, 309 U.S. page 89, 60 S.Ct. 406, 84 L.Ed. 590, 125 A.L.R. 1383, was designed to reach bank deposits outside the state, and that the postal savings deposits within the state are included not through deliberate legislative intent, but simply because they fall within the terms of the provision. The holdings in Commonwealth v. Madden's Ex'r, 265 Ky. 684, 97 S.W.2d 561, 107 A.L.R. 1379, and Madden's Ex'r v. Commonwealth, 277 Ky. 343, 126 S.W.2d 463, and in the United States Supreme Court case (309 U. S. 83, 60 S.Ct. 406, 84 L.Ed. 590, 125 A.L.R. 1383) were directed to the taxation of bank deposits without the state and to no form of deposit within the state. We conclude that the Madden case does not decide that the fifty cent tax is non-discriminatory and valid as between postal savings deposits made within Kentucky and all other deposits within the state taxed at the ten cent rate.

We think this conclusion is emphasized by the fact that neither the Kentucky holdings nor the Supreme Court decision considered the question of the effect of this state tax upon an instrumentality of the federal government which in addition to offering a safe depository for individual funds has also become an important federal financing agency. The imposition of such a prohibitive interference upon the activities of a federal institution was totally absent from the situation presented in those cases.

■ This discriminatory tax sought to be collected by the state upon United States postal savings deposits constitutes such a substantial burden upon an instrumentality and activity of the federal government as to be beyond the power of the state to impose. Postal savings institutions are a part of the structure of the federal government and entitled under the constitution to the same immunity from interference by the state as other federal instrumentalities. Graves v. People of State of New York ex rel. O'Keefe, supra; Pittman v. Home Owners' Loan Corp., supra; Federal Land Bank of St. Paul v. Bismarck Lumber Co., supra.

While in recent adjudications by the Supreme Court earlier doctrines of immunity of instrumentalities of the state and federal governments to taxation have been revised (Cf. Helvering v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427), nevertheless the doctrine that in our dual system of government neither authority has power through taxation to cripple or destroy the operations of the other through discriminatory taxation has not been modified.

■ Recent Supreme Court cases repeatedly emphasize that the extension of the federal power to tax the income of state officials and vice versa, of state power to tax the income of federal officers, as well as the power to compel payment of taxes by persons who deal with governmental agencies, exists only in case the tax is non-discriminatory. James v. Dravo Contracting Co., 302 U. S. 134, 161, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318; Helvering v. Mountain Producers Corp., 303 U.S. 376, 385, 58 S.Ct. 623, 82 L.Ed. 907; Helvering v. Gerhardt, supra, 304 U.S. 420, 58 S.Ct. 969, 82 L.Ed. 1427, Graves v. People of State of New York ex rel. O'Keefe, supra, 306 U.S. 484, 485, 487, 59 S.Ct. 595, 83 L.Ed. 927, 120 A.L.R. 1466. There has been no change in the rule that an implied immunity arises from undue interference when one governmental authority imposes its tax burdens on another. Graves v. People of State of New York ex rel. O'Keefe, supra, 306 U.S. 481, 484, 59 S.Ct. 595, 83 L.Ed. 927, 120 A.L.R. 1466. Obviously taxing postal savings certificates, and the deposits which they represent, five times as much as deposits in banks within the state, will cripple the extension, and within Kentucky possibly destroy the use of postal savings. If these deposits are to be taxed at such a rate in comparison with ordinary bank deposits throughout the forty-eight states, the use of postal savings depositories may be practically terminated. It follows that this tax cannot be upheld.

These conclusions make it unnecessary to decide whether these funds would be exempt from non-discriminatory taxation within the state if non-discriminatory tax provisions were enacted by the Kentucky legislature. We also deem it unnecessary to enter into a discussion of the codification of the various statutes and the extensive legislative history urged upon us by the appellant in connection with the ques-

tion of the claimed immunity of these deposits from taxation under Title 31, U.S.C., Section 742, 31 U.S.C.A. § 742, Section 3701, R.S. Since the tax is plainly discriminatory and substantially burdens an instrumentality of the federal government, the order of the District Court dismissing appellant's petition is correct and is affirmed.

SIMONS, Circuit Judge (concurring).

I concur in the result reached by the majority, but not on the ground that the Kentucky statute discriminates against postal savings deposits. I perceive no discrimination between such deposits and others of the same classification, and the classification has been held reasonable in the Madden case. The exaction is, however, an unconstitutional burden upon the financial activities of the Federal government, within the holding of the cases cited in the opinion.