**STANDARD OIL COMPANY, a Kentucky Corporation, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, ex rel. Robert H. ALLPHIN, Commissioner of Revenue, Appellee.**

Court of Appeals of Kentucky.

Dec. 13, 1957.

As Extended March 14, 1958.

Charles G. Middleton, Louis Seelbach, Leo T. Wolford, Edwin G. Middleton, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, for appellant.

William S. Riley, Frankfort, Chas. W. Dobbins, Louisville, for appellee.

MILLIKEN, Judge.

The primary issue on this appeal is whether this State can constitutionally levy an ad valorem tax upon the accounts and notes receivable and bank deposits of the appellant, Standard Oil Company, a Kentucky corporation, which intangibles admittedly have a business situs in other States.

The appellant, Standard Oil Company, has its home office in Louisville, Kentucky, and is engaged in the business of marketing petroleum products in five States—Kentucky, Alabama, Georgia, Mississippi and Florida. It has no refinery and no production, and its business consists of buying and selling petroleum products. It buys these products from supply points in Louisiana, a few Western States and in Venezuela. All of the products move in interstate or foreign commerce from the supply points to the States of Georgia, Alabama, Mississippi, Florida and Kentucky. The products to be sold in Georgia, Alabama, Mississippi and Florida are shipped directly to those States and are never within the State of Kentucky. Only those prod-

ucts to be sold in Kentucky come into this State.

The business in each of the States mentioned is conducted by a division manager located in each of the States, together with a large force of assistants, clerks, secretaries, salesmen, tank wagon drivers, etc. For instance, the division office in Mississippi has 340 employees; there were 909 employees in Florida; 498 in Alabama; and 750 employees in Georgia. Separate books of accounts receivable and notes are entered and listed in each of the respective States. Collections are made in each of the States and the collections, whether from cash sales, accounts receivable or notes, are deposited in local banks in each of the States. All expenses of operation, salaries, taxes, etc., are paid out of deposits in local banks, the division manager and other authorized personnel in his office drawing checks upon bank deposits within the respective States for all of the aforesaid business purposes. No one in the home office of the taxpayer at Louisville has the authority to or does draw checks on bank accounts in other States. If there is any balance at periodic intervals not necessary for the conduct of the business in each of the four Southern States, it is checked out by the division manager and forwarded to the home office in Louisville where it is received, deposited in Kentucky banks and taxes paid thereon to the State of Kentucky.

We conclude that in these circumstances, the taxpayer's accounts receivable and notes have a commercial, legal and taxable situs in each of the four Southern States, and the attorneys for the Commonwealth apparently concede that such is the case by their motion for summary judgment on the ground that there is no issue of fact in the case.

It is also a fact that the State of Florida during all the years in controversy, 1946 to 1952, has required this taxpayer to pay taxes to the State of Florida on its accounts and notes there, and the

State of Georgia, since the year 1949, has required it to do likewise to Georgia. The States of Alabama and Mississippi do not tax such intangibles, but, of course, may pass laws taxing them at any time.

Accordingly, the taxpayer points out that the bank deposits, accounts receivable and notes due it and collected in the States of Alabama, Georgia, Mississippi and Florida and used in the operation of the business there have no taxable situs in the State of Kentucky, and that if the Statutes of Kentucky should be so construed as to tax them in this State, it would violate the Commerce Clause of the Constitution of the United States as constituting a burden on interstate and foreign commerce; that it would also violate the Fourteenth Amendment to the Constitution of the United States in that it would deprive the taxpayer of its property without due process of law and deny it the equal protection of the law; that it would discriminate against this taxpayer, a Kentucky corporation, in favor of foreign corporations doing business in this State, and would thereby also violate Section 202 of the Kentucky Constitution.

The pertinent portion of our statute, KRS 132.190, involved declares:

"The property subject to taxation, unless exempted by the Constitution, shall be as follows: * * *

"(b) All intangible personal property of individuals residing in this state and of corporations organized under the laws of this state, wherever located."

The question of whether Kentucky could constitutionally levy an ad valorem property tax on the intangible property of a resident where the intangibles had a business situs in another State was answered in the negative in 1936 by this Court in Commonwealth v. Madden's Ex'r, 265 Ky. 684, 97 S.W.2d 561, 107 A.L.R. 1379. There we held that securities owned by Mr. Madden, but wholly used in an investment partnership of which he was a member in New York City, were not things apart from the partnership itself and hence were not taxable in Kentucky on the theory of "mobilia sequuntur personam"—that movables follow the person. Our opinion was based upon one written earlier that year (1936) by Chief Justice Hughes in Wheeling Steel Corporation v. Fox, 298 U.S. 193, 56 S.Ct. 773, 80 L.Ed 1143, in which the Supreme Court applied the same rule to intangibles *having a business situs* in a State which governed the taxation of tangible personal property and real estate located in a State —that there was no jurisdiction to tax unless the property was in the taxing State, and the usual rule governing intangibles— that they follow the person—was not applicable where the intangibles clearly had a business situs outside the taxing State. In the Wheeling case, Chief Justice Hughes wrote for a unanimous Court:

"This appeal presents the question of the validity of an ad valorem property tax laid by West Virginia upon accounts receivable and bank deposits of appellant, Wheeling Steel Corporation, organized under the laws of Delaware * * *.

"The tax is not a privilege or occupational tax. It is not a tax on net income. * * * It is an ad valorem property tax. We have held that it is essential to the validity of such a tax, under the due process clause, that the property shall be within the territorial jurisdiction of the taxing state. This rule receives its most familiar illustration in the case of land. The rule has been extended to tangible personal property which is thus subject to taxation exclusively in the state where it is permanently located, regardless of the domicile of the owner. * * * We have said that the application to the states of the rule of due process arises from the fact 'that their spheres of activity are enforced and protected by the Constitution, and therefore it is im-

possible for one state to reach out and tax property in another without violating the Constitution.' * * * When we deal with intangible property, such as credits and choses in action generally, we encounter the difficulty that by reason of the absence of physical characteristics they have no situs in the physical sense, but have the situs attributable to them in legal conception. Accordingly we have held that a state may properly apply the rule of mobilia sequuntur personam and treat them as localized at the owner's domicile for purposes of taxation. * * * And having thus determined 'that in general intangibles may be properly taxed at the domicile of their owner,' we have found 'no sufficient reason for saying that they are not entitled to enjoy immunity against taxation at more than one place similar to that accorded to tangibles.' * * * But despite the wide application of the principle, an important exception has been recognized.

"In the case of tangible property, the ancient maxim, which had its origin when personal property consisted in the main of articles appertaining to the person of the owner, yielded in modern times to the 'law of the place where the property is kept and used.' * * * It was in view 'of the enormous increase of such property since the introduction of railways and the growth of manufactures' that it came to be regarded as 'having a situs of its own for the purpose of taxation, and correlatively to exempt at the domicile of its owner.' * * * There has been an analogous development in connection with intangible property by reason of the creation of choses in action in the conduct by an owner of his business in a state different from that of his domicile. * * *

"These cases, we said * * * 'recognize the principle that choses in action may acquire a situs for taxation other than at the domicile of their owner, if they have become integral parts of some local business.' We adverted to this reservation * *." (Cases cited omitted for brevity.)

See, also, annotation in 79 A.L.R. 344(1931) entitled "Business situs of intangibles in state other than domicile of owner as excluding tax at domicile."

■ As in the Wheeling case, the tax involved in the case at bar is a direct ad valorem tax upon property. While intangibles usually follow the owner and are taxable at the domicile of the owner, they are not subject to a direct property tax at the domicile of the owner where the facts clearly show that they actually have not followed the owner but have acquired a definite situs elsewhere. The Department tacitly admits that the intangibles here involved have acquired a business situs out of this jurisdiction and the evidence amply sustains the admission. The Wheeling case stands for the fundamental principle that only the State where the property is situated—the State which affords protection to the property—can legally levy a direct ad valorem property tax upon it. Kentucky affords no protection as a consideration for this attempted tax exaction, and hence the attempted levy here, if sustained, would more resemble an extortion than a tax. 51 Am.Jur., Taxation, Sec. 450, p. 465.

■ Our attention has been called to the fact that intangibles may be subjected to taxation by more than one State, that the Fourteenth Amendment does not preclude taxation of intangibles by more than one State and, by inference, Kentucky should be permitted to exact the present tax from Standard. We readily agree that the Fourteenth Amendment does not preclude more than one State from levying a tax where those States afford some de-

gree of legal protection to the property. But the taxes to which this principle applies are not direct taxes on property. They are State succession or inheritance taxes, Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339 (1939, Mr. Justice Stone); or taxes on the transfer of corporate stock, State Tax Commission of Utah v. Aldrich, 316 U.S. 174, 62 S.Ct. 1008, 86 L.Ed. 1358 (1942, Mr. Justice Douglas); or a corporate privilege or license tax measured by the value of the stock of a domestic corporation which had no property within the domiciliary and taxing State, Cream of Wheat Company v. Grand Forks County, 253 U.S. 325, 40 S.Ct. 558, 64 L.Ed. 931 (1920, Mr. Justice Brandeis). And a State or local unit of government may levy a personal tax on a citizen and include within the scope of the tax a personal bank account in another State. Fidelity & Columbia Trust Company v. City of Louisville, 1917, 245 U.S. 54, 38 S.Ct. 40, 62 L.Ed. 145. But the author of the last opinion, Mr. Justice Holmes, was careful to point out that the bank account was not used in business in the other State, that Missouri, where the bank account was located, could tax it as property, that the Louisville tax upon it was essentially a tax upon the person of a Louisville citizen with his property being used as a measuring stick for the value of his citizenship. In each of these cases the taxing States contributed varying degrees of protection to either the person or property taxed, but in the case at bar Kentucky affords no protection to these intangibles—the law of Kentucky cannot be invoked for their protection, because the facts clearly establish that they have acquired a legal situs elsewhere. Where such a factual situation prevails, where the property is outside this State in legal theory as well as actual fact, the due process clause of the Fourteenth Amendment to the Federal Constitution precludes a direct property tax upon it by Kentucky.

Although it is argued that the State of Incorporation has great leeway in imposing conditions upon the privilege of corporate citizenship, this power has its limits. The corporate privilege tax of this State is wisely designed to affect domestic and foreign corporations alike by measuring the tax by the value of capital stock represented by property owned and business transacted in this State, KRS 136.070, and this State also imposes a corporate net income tax which expressly excludes "the income from intangible property having a business situs outside of Kentucky." KRS 141.120(3)(b). We have seen no case, and do not expect to see one, which holds that the State of Incorporation can impose a direct ad valorem property tax on the corporate property located outside the State as a condition for permitting a corporation to be organized under its laws. In any event, Kentucky has not attempted to impose such a condition.

■ We conclude that the property here sought to be taxed is beyond the jurisdiction of this State to tax because it has a situs outside this State, and, as a consequence, the attempted levy of a direct ad valorem property tax thereon is unconstitutional and void as a violation of the due process clause of the Fourteenth Amendment to the Federal Constitution.

There is another issue in the case. It arises from the fact that Standard Oil Company, in listing for taxation its accounts receivable for gasoline sold to dealers in Kentucky, has consistently listed the accounts at only 70 percent of their face value, on the theory that the remaining 30 percent represents the amount of gasoline tax that is included in the price of the gasoline, which amount, the company contends, is really money belonging to the state, which the company is collecting as trustee for the state, and which therefore should not be subject to ad valorem tax.

The proceeding in the court below was one to assess omitted property, under KRS 132.330 and 132.340. The court held that the accounts receivable were taxable at their full face value, and that the amount

of 30 percent that had been deducted by the company in listing its accounts was assessable as omitted property. The correctness of this holding is before us for review.

Under KRS 138.220, the Kentucky gasoline tax is imposed upon gasoline "received" in this state, and must be paid by the "dealer" who "receives" the gasoline. The tax on gasoline received in any month must be paid before the end of the succeeding month. KRS 138.280. Of course the dealer, which in this case is Standard Oil Company, recovers the amount of the tax from the retailer to whom it is sold, and he in turn recovers it from the ultimate consumer. As a practical matter the consumer bears the ultimate burden of the tax.

Standard Oil Company argues that when it collects gasoline tax from a retailer or consumer it is acting as a trustee or collection agent for the state; that the amount of tax included in the sale price of the gasoline is money that is the property of the state and not the property of Standard Oil; and that when Standard sells gasoline on credit and pays the tax out of its own funds it is merely lending money to the state, which the state pays back to Standard out of the tax money that Standard collects for the state from the retailer or consumer when the latter eventually pays his account.

We think a simple illustration will show that Standard's argument is not sound. Let us suppose that Standard sells, on credit, a quantity of gasoline upon which the tax amounts to $10,000. Standard pays the tax out of cash on hand, which is taxable property. By paying the tax Standard reduces its taxable property by the amount of $10,-000. However, in place of the cash Standard has accounts receivable which include the $10,000. When the accounts are paid, Standard will have back its original $10,000. So the accounts receivable represent *Standard's* money, and nothing else. The accounts receivable should be taxed at face value because they merely represent a different *form* of property than the cash. If,

as Standard argues, the *state* owes Standard the $10,000 advanced to pay the taxes, and Standard's customers owe $10,000 to the *state,* then we can see no reason why the debt of the state to Standard should not be considered as a taxable account receivable. Standard submits no authority for its bare assertion that a debt owed by the state is not a taxable item of property of the creditor. It seems to us that if the state should buy materials or supplies on open account, the account would be equally as valuable an item of property as would an account owed by an individual.

Standard relies on some cases from other jurisdictions holding that a *sales* tax or *gross receipts* tax cannot be imposed upon that portion of the sale price of gasoline that represents the gasoline tax. However the reasoning of those cases is not applicable to a *property* tax.

■ We think it is clear that all the money that will be collected on Standard's accounts receivable will be Standard's money, and that, as the lower court held, the accounts are taxable at their full face value.

The further question remains as to whether the 30 percent which Standard has been deducting from the value of its accounts in making its assessment lists may be assessed as *omitted* property. Standard contends that it is a mere case of *undervaluation,* which can be reached only by reopening the assessments under KRS 132.360.

■ We think the case is not one of mere undervaluation, but is the equivalent of a complete failure to list a particular account. In effect, Standard has been treating the tax portion of its accounts as though they were entirely separate accounts. It simply has not listed the tax accounts. Accordingly, they may be assessed as omitted property, and the lower court properly so held.

The judgment is reversed to the extent that it holds taxable the intangibles having a business situs in other states; it is af-

firmed to the extent that it holds taxable, and assessable as omitted property, the portion of the Kentucky accounts receivable that represents gasoline tax.