COMMONWEALTH of Kentucky ex rel. J. E. LUCKETT, Commissioner of Revenue, Appellant,

v.

LOUISVILLE & NASHVILLE RAILROAD COMPANY and Kentucky Board of Tax Appeals, Appellees.

LOUISVILLE & NASHVILLE RAILROAD COMPANY, Cross-Appellant,

v.

COMMONWEALTH of Kentucky ex rel. J. E. LUCKETT, Commissioner of Revenue, Cross-Appellee.

Court of Appeals of Kentucky.

Feb. 18, 1972.

Rehearing Denied May 12, 1972.

William S. Riley, Cyril E. Shadowen, Dept. of Revenue, Frankfort, for appellant.

Marion Rider, Frankfort, Philip M. Lanier, Robert C. Moore, Louisville, for appellees.

NEIKIRK, Judge.

The Louisville & Nashville Railroad Company (hereinafter referred to as L & N), a Kentucky corporation, engaged in the business of a common carrier and having its principal office in Louisville, Kentucky, filed with the Commonwealth of Kentucky, Department of Revenue (hereinafter referred to as Department of Revenue), its schedule of property subject to ad valorem taxes for the year 1963. The L & N reported certain intangible property located outside of Kentucky in the amount of $26,723,464 as not being subject to Kentucky ad valorem taxes. The Department of Revenue reviewed the return and determined that the listed intangible property was subject to be taxed and requested payment from the L & N of additional taxes due in the sum of $66,888.66.

The L & N appealed the additional assessment to the Kentucky Board of Tax Appeals. The L & N contended that $19,698,151 of the intangible property was not taxable by Kentucky because it was used in a separate and independent business and had acquired a business situs in the city of New York; and that the remaining $7,025,313 in intangibles was not taxable in Kentucky for various other reasons.

The Kentucky Board of Tax Appeals held that the intangibles in the custody of the L & N office in New York in the amount of $19,698,151 had acquired a business situs outside of Kentucky and, therefore, were not subject to taxation by Kentucky. The Department of Revenue perfected an appeal to the Franklin Circuit Court from this portion of the Board's order. The Board held that the remaining $7,025,313 of intangibles was subject to the ad valorem tax under KRS Chapter 132. The L & N attempted to appeal this portion of the Board's order by filing a cross-appeal in the Franklin Circuit Court. The Department of Revenue moved that the cross-appeal be dismissed, pointing out that it had not been timely filed. The Franklin Circuit Court did not pass on this motion, but entered judgment affirming the Board's order in all respects. The Department of Revenue appeals to this court from the portion of the judgment that affirmed the Board's order that the intangibles in the L & N's office in the city of New York had acquired a business situs and were not taxable in Kentucky. The L & N filed a cross-appeal in this court from the portion of the judgment that affirmed the Board's order that all other intangibles in dispute were taxable. The Department of Revenue moved to dismiss the cross-appeal. By an order we directed that the motion to dismiss the cross-appeal be pass-

ed for consideration on the merits, which we now shall proceed to do.

The order of the Kentucky Board of Tax Appeals was entered on March 16, 1967. It was not until April 20, 1967, that the L & N attempted to appeal that portion of the final decision of the Board adverse to L & N. KRS 131.370 requires an adverse decision of the Board of Tax Appeals be appealed to the Franklin Circuit Court within thirty days. Thus, the attempted appeal designated as "cross-appeal" was not timely filed. The L & N contends that a cross-appeal is not essential in order to present an issue that is an element of, or one closely related in substance to, the question properly presented by the other party. In the instant case, the Department of Revenue had convinced the Kentucky Board of Tax Appeals that the L & N's intangibles, other than those held in the New York office, were subject to be taxed. The Department of Revenue did not attempt to fragment appellate review by selectively designating special findings of the Board, but appealed from that portion of the final order of the Board adverse to the Department of Revenue. It was incumbent upon the L & N to appeal to the Franklin Circuit Court that portion of the Board's order adverse to the L & N's contentions in order to vest jurisdiction in the Franklin Circuit Court as to these issues. The L & N evidently considered this to be sound by filing a cross-appeal in the Franklin Circuit Court and a cross-appeal in this court. The L & N could have perfected a direct appeal from that portion of the Board's order adverse to its claims. Had the L & N chosen this route and no appeal had been taken by the Department of Revenue, the Franklin Circuit Court would have had jurisdiction to dispose of the cause without reference to other issues not properly reserved and presented. The Franklin Circuit Court was without jurisdiction to hear and determine any issues other than those perfected by appeal of the Department of Revenue. Commonwealth, Dept. of Highways v. Berry-man, Ky., 363 S.W.2d 525 (1962); Kentucky Department of Revenue v. Summers-Herrmann, Inc., Ky., 453 S.W.2d 543 (1970).

The Franklin Circuit Court erred in failing to dismiss the L & N's cross-appeal to that court. However, the net effect of the circuit court's judgment was the same as if the cross-appeal had been dismissed, so we are affirming that judgment on the L & N's cross-appeal to this court.

The issue squarely presented to the Franklin Circuit Court and now to this court is whether or not the intangibles owned by the L & N and physically located in an office in New York City are subject to the ad valorem tax imposed by the Commonwealth of Kentucky.

KRS 132.190(1) (b) provides:

"(1) The property subject to taxation, unless exempted by the Constitution, shall be as follows:"

\* \* \* \* \* \*

"(b) All intangible personal property of individuals residing in this state and of corporations organized under the laws of this state unless it has acquired a business situs without this state."

The L & N contends that the activities of the New York office are such as to bring the intangibles there held under the above-quoted statutory exception.

The question of "business situs" presents a problem. It is difficult to formulate a consistent workable rule for determining if intangibles physically located outside the state of a domiciled owner corporation are subject to be taxed by the domiciliary state. As a general rule, intangibles are taxable at the legal domicile of the owner on the theory of the Roman maxim "mobilia sequuntur personam": movables follow the owner. A recognized exception to this rule is that if the intangibles have become an integral part of some local independent and separate business activity and their possession and control are localized in a nondomiciliary state, then the intangibles have acquired a business si-

tus apart from the owner's domicile. This is known as the "integration doctrine." Wheeling Steel Corp. v. Fox, 298 U.S. 193, 56 S.Ct. 773, 80 L.Ed. 1143 (1936).

The reasoning behind the establishment and growth of the integration doctrine is sound, and we do not question its validity; nor do the parties. However, in any determination of the establishment of a business situs, the facts in each case must be examined. Generally speaking, courts have agreed that certain elements must be present in order for the courts to recognize the existence of a business situs of intangible property under the integration doctrine. There must be a general or more or less continuous course of business; a permanency of location of the intangibles; independent control and management as distinguished from mere custody for safekeeping; possession and control by an independent local agent who holds the intangibles for the purpose of transacting a permanent business; and the business or investments in the nondomiciliary state must be so established and used in such a fashion that the substantial use and value of the intangibles become attached to and become an asset of the business outside the domicile of the owner. See 143 A.L.R. 361.

The L & N for many years has maintained surplus funds not needed in its day-to-day railroad obligations. In order to reap the greatest benefit possible out of this surplus, the L & N uses these funds to purchase securities. For many years there has been approximately $43,000,000 employed as capital in this endeavor. We have no quarrel with the L & N's position that it has a legal right to buy and sell and trade in securities for its own account. KRS 271.125(10). These activities may be properly classified as a business. KRS 139.040. Kales v. Commissioner of Internal Revenue, 6 Cir., 101 F.2d 35 (1939). This does not mean, however, that the L & N's investment activities constitute a business enterprise separate from and independent of the overall railroad business activities of the L & N.

The L & N contends that its securities business in New York meets the requirements that courts have considered essential in determining business situs, by reason of these facts: (1) For the purpose of carrying on the securities business, the L & N maintains an office in New York; (2) the books concerning the activities of the office are kept in New York; (3) the Board of Directors and Executive Committee of the company hold meetings in New York; (4) the day-to-day management of the securities in New York is the responsibility of the Vice President-Finance Agent, a resident of New York; (5) the intangible property is physically located there; (6) the income from the securities business is received in New York; (7) all accounts are kept in New York banks; (8) the authority to draw on these accounts is vested in the New York agent; (9) the expenses in connection with the activities of the office are paid from accounts in New York banks; (10) the agent has independent management of the securities; (11) the securities enterprise is of a permanent and continuous nature; and (12) the intangible personal property sought to be taxed is part of and is connected with a local business in New York.

The L & N cites Commonwealth v. Madden's Ex'r, 265 Ky. 684, 97 S.W.2d 561 (1936), and Standard Oil Company v. Commonwealth ex rel. Allphin, Ky., 311 S.W.2d 372 (1957), as reliable authorities for its position that the intangibles have acquired a business situs in New York.

In Madden, we held that the Commonwealth of Kentucky had no power to subject to ad valorem taxation the interest of a Kentucky resident in the assets of a brokerage partnership owned in part by the Kentucky resident and located in New York. The assets that made up the brokerage firm were located in New York and completely controlled by an office there. Kentucky's only relationship was that Madden, from time to time, lived in Kentucky. The sole business of the partnership was the buying and selling of securities, and all activities were conducted exclusively in New York. These facts supported the

finding that the partnership brokerage firm had established a business situs and was domiciled in New York. The instant case is distinguishable on the admitted facts.

In the Standard Oil Company case, supra, this court said:

> "The primary issue on this appeal is whether this State can constitutionally levy an ad valorem tax upon the accounts and notes receivable and bank deposits of the appellant, Standard Oil Company, a Kentucky corporation, which intangibles admittedly have a business situs in other States."

Unlike in the instant case, the business situs of the intangibles belonging to the Standard Oil Company was admitted to be outside the jurisdiction of Kentucky and, therefore, the intangibles were not subject to be taxed by Kentucky. The Standard Oil Company case is not controlling here, as the "business situs" is the battleground of the antagonists.

■ In our opinion there are elements present in this case that override the factors relied upon by the L & N and are controlling in our determination that the evidence does not support the establishment of a business situs in a state other than Kentucky.

The evidence establishes that the purchase and sale of securities by the New York office are dictated by the financial needs and obligations of the L & N. The working capital of the New York office is comprised of surplus funds earned by the L & N. The New York office maintains detailed financial records of the L & N. Liquidity is a most important factor in the purchase and sale of the securities. In order to meet the day-to-day demands of the L & N, the investments are made for a period consisting of only several hours or a very few days. The entire working capital in, as well as any profits earned by, the New York office are subject to the instant demands of the L & N. The active and constant contact the domiciled corporation has with and over the New York office

subjects the activities there to the control of and domination by the L & N. The L & N conducts no business as a common carrier in New York. These factors convince us that the New York enterprise is simply a convenient method of carrying on a vital and indispensable part of the company's operation as a common carrier by aiding the L & N to finance its corporate business. In our opinion the evidence requires the conclusion that while the buying and selling of securities by the L & N in New York constitute business transactions, they do not amount to a separate and independent securities business in New York. This is not to say that in order for a business to come within the integration doctrine or to have a business situs it must have no connections at all with the individual or corporation that happens to be its owner. We are saying that each case must be examined to determine if the elements present are such as to establish that the nondomiciliary business activities are a separate entity and independent from the business of the domiciled corporation.

The L & N's contention that its securities business in New York is a separate and independent business enterprise is not compatible with the position it must maintain to stay in conformity with the Constitution of the Commonwealth of Kentucky. Section 210 of our Constitution states:

> "No corporation engaged in the business of common carrier shall, directly or indirectly, own, manage, operate or engage in any other business than that of a common carrier, or hold, own, lease or acquire, directly or indirectly, mines, factories or timber, except such as shall be necessary to carry on its business; and the general assembly shall enact laws to give effect to the provisions of this section."

Section 192 of our Constitution prohibits a corporation from engaging in any business other than that expressly authorized by its charter, and KRS 271.145(1) prohibits any corporation from engaging in any

business other than that expressly authorized by its articles of incorporation.

In our opinion the L & N does have the power to buy and sell securities to facilitate its corporate purposes as a common carrier. However, consistently with the above constitutional and statutory prohibitions, the L & N cannot maintain that it is operating an independent and separate securities business having a business situs, under all this term implies, in New York or anywhere else.

It is our conclusion that the intangibles belonging to the L & N and located in its New York office did not acquire a business situs elsewhere such as to exempt them from ad valoren taxation in the Commonwealth of Kentucky.

On the cross-appeal the judgment is affirmed; on the direct appeal the cause is reversed and remanded for entry of judgment in conformity with this opinion.

All concur.