KENTUCKY DEPARTMENT OF
REVENUE, Appellant,

v.

Mrs. Boise S. BOMAR, Appellee.

Court of Appeals of Kentucky.

Oct. 20, 1972.

William S. Riley, Asst. Atty. Gen., William F. Gadd, Department of Revenue, Frankfort, for appellant.

Thomas B. Benham, Hatcher, Meyerson, Oxford & Irwin, Atlanta, Ga., F. Preston Farmer, Hamm, Taylor, Milby & Farmer, London, for appellee.

STEINFELD, Chief Justice.

The question to be decided in this litigation is whether the appellee Mrs. Boise S. Bomar is liable to Kentucky for ad valorem taxes on the corpus of a trust located in Georgia. The circuit court held that she was not liable, but we reverse.

In 1939 Mrs. Bomar, a Kentucky resident, entered into a trust agreement with an Atlanta, Georgia bank pursuant to which she delivered to the bank as trustee intangibles, principally common stocks, to manage for her. She retained the right to control all purchases and sales which the trustee might make and to amend or revoke the trust agreement at any time. It was amended on several occasions, but no contention is made that the settlor surrendered any of these rights.

The trustee retained the securities in its possession in Atlanta, there invested and reinvested the corpus of the trust and paid to Georgia the property tax thereon.[1] The income was paid to Mrs. Bomar and she paid income tax on it to Kentucky. The Kentucky Department of Revenue assessed ad valorem taxes for the years 1962 through 1966 in the total amount of $2,913.10 " * * * against the corpus of (the) trust created by Mrs. Boise S. Bomar * * * ",[2] relying on KRS 132.190(4), which provides:

"The situs of intangible personal property for purposes of taxation shall be at the residence of the real or beneficial owner, and not at the residence of the fiduciary or agent having custody or possession * * *."

At the time of the assessment the property assessed had a current value of approximately $225,000.[3]

The Kentucky Board of Tax Appeals overruled a protest based upon the claim that the trust had a business situs in Georgia and sustained the assessment, but on appeal the circuit court held that the property assessed was exempt from Kentucky ad valorem taxes under KRS 132.190(1)(b). That statute reads:

"(1) The property subject to taxation, unless exempted by the constitution, shall be as follows:

(b) All intangible personal property of individuals residing in this state and of corporations organized under the laws of this state unless it has acquired a business situs without this state."[4]

The narrow question before us is whether the corpus of the trust acquired a "business situs" outside of Kentucky. In considering this issue we must follow the rule " * * * that provisions for exemption from payment of taxes will be strictly construed, and all doubts and implications resolved against it." Mordecai F. Ham Evangelistic Ass'n v. Matthews, 300 Ky. 402, 189 S.W.2d 524, 168 A.L.R. 1216 (1945). Also see 51 Am.Jur. Taxation, § 524, p. 526.

To acquire the exempt status the securities must be devoted to a business use in the foreign state. Cf. Mecklenburg County v. Sterchi Bros. Stores, 210 N.C. 79, 185 S.E. 454 (1936). The Department of Revenue argues that placing the securi-

1. Taxation by Georgia does not prevent Kentucky from taxing. Bingham's Adm'r. v. Com., 199 Ky. 402, 251 S.W. 936 (1923) ; Standard Oil Company v. Com., 311 S.W.2d 372 (Ky.1958).

2. Quoted from a stipulation of the parties.

3. Also from the stipulation of the parties.

4. We have held that Kentucky could not levy a direct ad valorem tax on intangible property of a Kentucky corporation doing business in Kentucky and other states when the intangibles had a foreign business situs. Standard Oil Company v. Com., 311 S.W.2d 372 (Ky.1958).

ties with "* * * the trustee in Georgia is not for any business purposes whatever except for safe convenience in administering the trust fund as required by the trust agreement for the benefit of the beneficiary * * *." We are referred to no case, and we have found none, in which the facts are the same or even similar. The citations relate to an interest in an active partnership engaged in trading on the New York Stock Exchange where the Kentucky resident substantially participated there in business activities, as in Commonwealth v. Madden's Ex'r, 265 Ky. 684, 97 S.W.2d 561, 107 A.L.R. 1379 (1936), and to a corporation's commercial enterprise as in Board of Tax Supervisors, etc. v. Baldwin Piano Co., 296 Ky. 673, 178 S.W.2d 212 (1944).

■ The Act relating to ad valorem taxes does not define "business situs" although it contains a number of definitions.[5] We glean from texts and the cases that the words "business situs", within the meaning of the statute, indicate that the intangibles must be associated with or related to an activity of a mercantile nature, a calling, a profession or an occupation for the purpose of improving the owner's economic position. Cf. R. J. Reynolds Tobacco Co. v. City of Lexington, 181 Ky. 503, 205 S.W. 592 (1918). In a broad sense, a business is synonymous with a calling, an occupation or a trade engaged in for the purpose of obtaining a livelihood or gain. Long v. City of Anaheim, 255 Cal.App.2d 191, 63 Cal.Rptr. 56 (1967). 84 C.J.S. Taxation § 116, p. 235, reads:

"* * * the term 'business situs' has been defined as a situs in a place other than the domicile of the owner, where such owner, through an agent, manager, or the like, is conducting a business out of which credits or open accounts grow and are used as a part of the business of the agency, and the courts have laid down certain conditions which ordinarily should exist in order that intangibles may have a business situs apart from the domicile of the owner. Thus, the necessity for some business use of the intangibles involved or some authority to manage, control, or deal with them in a business way in the state in which, it is claimed, a business situs exists, has been asserted or recognized, as has the necessity that the business should have more or less independent status, * * *"

51 Am.Jur., Taxation, § 469, p. 480, states:

"The existence of a 'business situs' on intangibles depends on different combinations of facts, and statements of the courts as to the circumstances which suffice to create a business situs should not be accepted without qualification, so far as they imply that the facts and circumstances which they embody are essential for the assumption of a business situs. The doctrine is ordinarily formulated so as to limit its application to cases where the possession and control of the property right have been localized in some independent business or investment away from the owner's domicil, so that its substantial use and value primarily attach to and become an asset of the outside business. A 'business situs' would seem to mean what the words indicate, that is, a situs in a place other than the domicil of the owner, where such owner, through an agent, manager, or the like, is conducting a business out of which credits or open accounts grow and are used as a part of the business of the agency. The principle of business situs is, however, inapplicable if there is not a substantial connection of intangibles with some business of their nonresident owners within the state."

In Holly Sugar Corp. v. McColgan, Calif., 18 Cal.2d 218, 115 P.2d 8 (1941), it is said:

"As an exception to the general rule embodied in the legal maxim mobilia se-

---

5. KRS 139.040, a section of the Act imposing sales and use taxes, provides "Business" includes any activity engaged in by any person or caused to be engaged in by him with the object of gain, benefit or advantage, either direct or indirect.

quuntur personam, it is equally well settled that intangible property may acquire a situs for taxation other than at the domicil of the owner if it has become an integral part of some local business * * *. Business situs arises from the act of the owner of the intangible in employing the wealth represented thereby, as an integral part of the business activity of the particular place, so that it becomes identified with the economic structure of that place and loses its identity with the domicil of the owner."

Grieves v. State, 168 Okl. 642, 35 P.2d 454 (1934), stated:

"In order to constitute a business situs where intangible property is taxable other than the owner's domicile, it must be shown that possession and control of the property has been localized in some independent business or investment away from the owner's domicile so that its substantial use and value primarily attach to and become an asset of the outside business."

We announced in Commonwealth ex rel. Luckett v. Louisville & N. R. Co., 479 S. W.2d 15 (Ky.1972), that " * * * if the intangibles have become an integral part of some local independent and separate business activity and their possession and control are localized in a nondomiciliary state, then the intangibles have acquired a business situs apart from the owner's domicile."

■ To establish a foreign "business situs" for intangibles the possession and control thereof must be localized in some independent business or investment away from the domicile of the owner so that their substantial use and value primarily attach to and become an asset of an outside business. Kahan v. Schonwald, 192 Okl. 307, 135 P.2d 971 (1943); St. Louis Union Trust Co. v. State, 348 Mo. 725, 155 S.W. 2d 107 (1941).

It was held in Maricopa County v. Trustees of Arizona Lodge, etc., 52 Ariz.

329, 80 P.2d 955 (1938), that " * * * where the intangible property has acquired a business situs in the state, that is, where it is left with an agent who invests and reinvests it in the carrying on of a regular business," it is taxable in the state where located. It should be noted that this expression is bottomed on the operation of a regular business. Roth v. Fund of Funds, Ltd., C.A.N.Y., 405 F.2d 421 (1968), stated that " * * * it is more than doubtful whether 'transacting a business in securities' can be read to cover the Fund's activities of investing in securities." In re Green's Estate, 109 Misc. 112, 178 N.Y.S. 353 (1919), held that Mrs. Green at the time of her death was not engaged in business within the meaning of the tax laws. The opinion states:

"Nor is an elaborate office organization the legal test of doing business. Large private estates often require clerks, bookkeepers, and sometimes an extensive office. They constantly reinvest surplus moneys, collect rents and dividends, often buy shares or other securities and resell them, and yet the management of the estate is not, I think, to be regarded as engaged in business in the sense in which a trader, a merchant, or a broker is engaged in business. The management of an estate is not the doing of business within the meaning of the law. A person living on his rents and the profits of capital is not 'doing business' at common law, because he reinvests his surplus or loans his capital wherever he can to his advantage."

Similarly it was reasoned in Higgins v. Commissioner of Internal Revenue, 312 U. S. 212, 61 S.Ct. 475, 85 L.Ed. 783 (1941), that evidence disclosing record keeping, collecting interest and dividends from securities through managerial attention was insufficient to establish that a business had been carried on.

■ It appears to us that the corpus of Mrs. Bomar's trust did not become " * * * an integral portion of the busi-

ness activity of (Georgia), so that it (became) identified with the economic structure of that place and (lost) its identity with the domicil of the owner." Holly Sugar Corp. v. McColgan, supra. The control of the intangibles was never " * * * localized in some independent business or investment away from the owner's domicile so that its substantial use and value primarily attached to and (became) an asset of the outside business." Grieves v. State, supra. While we consider retention of control in Kentucky not to be dispositive of the issue before us, we find that neither personally nor through an agent did Mrs. Bomar engage in a business activity in Georgia. We hold that the corpus of the trust did not have a foreign business situs, therefore, it was not exempt under the provisions of KRS 132.-190(1)(b) from Kentucky taxation. Cf. County Board of Tax Sup'rs of Jefferson County, et al. v. Helm, 297 Ky. 803, 181 S. W.2d 452 (1944).[6]

The appellant requests that we determine whether the tax rates should be those imposed by KRS 132.020 or KRS 132.215. We decline to do so as the record indicates that this issue has not been presented to or considered by the trial court or the Kentucky Board of Tax Appeals.

The judgment is reversed and this action is remanded to the trial court for further proceedings consistent herewith.

All concur.

6. The property right to withdraw the proceeds of an insurance policy located in a foreign state was held subject to ad valorem taxation in Kentucky.